**Marcia Lee TOBEY, Petitioner,**

v.

**Stewart UDALL, Secretary of Interior, Respondent.**

**Civ. No. 61-263.**

United States District Court
D. Oregon.

Feb. 27, 1962.

Thomas R. Mahoney, Portland, Or., for petitioner.

Victor E. Harr, Asst. U. S. Atty., Portland, Or., for respondent.

EAST, District Judge.

The petitioner is a member of the Klamath Tribe of Indians (Oregon), and is of legal majority. She is duly enrolled on the tribal list, and, as such enrollee, is entitled to receive cash benefits in an amount in excess of $40,000.-00 by reason of the sale of tribal properties, all pursuant to the terms of the

"Klamath Indian Termination Act of August 13, 1954" (68 Stat. 718, as amended), 25 U.S.C.A. § 564 et seq.

It appears from the evidence that in anticipation of the receipt of these benefits, and upon the petitioner's written consent, a Portland attorney-at-law was appointed guardian of the estate of petitioner by order of the Circuit Court of the State of Oregon for Multnomah County. The guardian, based upon the security of the coming payments, secured guardian loans, and between September 25, 1959, and July 11, 1961, advanced to the petitioner from such loans and moneys of her estate the sum of approximately $9,000.00. Through no fault of the petitioner, except her lack of understanding of the value of money, the evidence shows that waste of her estate was committed.

Heretofore, the defendant secretary, upon a showing to him, made a determination, pursuant to the provisions of Title 25 U.S.C.A. § 564n., that the petitioner was "in need of assistance" in the handling of her estate, and thereupon placed the accruals of petitioner's benefits in the hands of and under the control of the United California Bank of Oakland, California (Dorris Branch), as trustee, for the use and benefit of the petitioner.

In these proceedings, the petitioner seeks to set aside the mentioned finding and action of the defendant secretary and have her estate returned to her for her own handling and management.

The evidence before and the showing made to the defendant secretary as the basis for his finding is not revealed in the evidence presented at these proceedings, it being unnecessary, as these proceedings are not a review of the defendant secretary's action based upon the evidence before him; but on the contrary, primary proceedings akin to a hearing *de novo*.

As the Court sees it, there are two questions to be decided, *viz.*:

1) What is the legal definition of the phrase "in need of assistance," as used in Title 25 U.S.C.A. § 564n?

2) Whether the evidence before this Court will support a conclusion that the petitioner is "in need of assistance," as so defined?

In dealing with the first question, it is incumbent that we ascertain the intent of Congress with reference to the Termination Act.

■ Turning first to the published report of the proceedings of the joint hearings before the Subcommittees of the Committees on Interior and Insular Affairs, with reference to the proposed Congressional legislation on the "termination of Federal supervision over certain tribes of Indians," held on February 23 and 24, 1954. On page 251, we find the following colloquy between Representative D'Ewart and Mr. Sigler, of the Department of Interior:

"Representative D'Ewart. And does the phrase 'in need of assistance' have any specific definition?

"Mr. Sigler. No, Congressman D'Ewart. Those are the words that were intended to suggest that the individual is not able to handle his own affairs in normal business competitive practice without some kind of help, to replace the help that the Federal Government is now providing.

"Those words are not intended to suggest incompetence in the strictly legal sense.

"Representative D'Ewart. I think that makes the record clear on this section."

We also get some help from three adjudicated cases found by the Court's search. The court in Peabody v. Town of Holland, 107 Vt. 237, 178 A. 888, 98 A.L.R. 866 (1935), stated that:

"Under statute providing for relief of any 'poor person in need of assistance,' absolute destitution is unnecessary, since 'assistance' implies that the needy person may be able to bear some of the expense of his support."

To me this would tend to show that the court's interpretation of the word "as-

sistance" would imply something less than total dependency, and, carrying an analogy to this case, total (legal) incompetency.

In Sowle v. Sowle, 115 Neb. 795, 215 N.W. 122 (1927), the court defined "assistance" in an alienation of affections case as "Assistance," meaning act of assisting, help, aid, furtherance, succor, support.

The Oregon Supreme Court, in defining the phrase "incapable of conducting their own affairs," In re Northcutt, 81 Or. 646, 148 P. 1133, 160 P. 801 (1916), stated that they were persons "unable without *assistance* [emphasis supplied] properly to manage and take care of their property, and who would be likely to be deceived, dominated, or imposed on by artful or designing persons; it not being enough that one does not handle his property judiciously."

So, with the aid of the discussion held at the subcommittee hearing and the above adjudicated cases, I am of the opinion that the phrase "in need of assistance" means exactly that the individual so "in need of assistance" is one who "is not able to handle his own affairs in normal business competitive practice without some kind of help,   *   *   *" to replace the guardianship of the Klamath Indians by the Federal Government prior to the enactment of the Termination Act. This need of assistance is the result of the individual's emotional or mental proclivities which prompts him to waste his money and property and also permits him to be imposed upon by artful or designing persons. Such mental or emotional instability may be to the extent of legal mental incompetency, but not necessarily so, as it can be substantially short of such mental status.

Turning to the question as to whether the petitioner was at the time of the findings and conclusions of the defendant secretary and is now "in need of assistance" to the extent that it is to her best interests that the trusteeship be continued. The evidence before me is fairly voluminous as to the adult life and doings of the petitioner. The evidence of petitioner's arrests for intoxication and disorderly conduct and her sparkling love life are of no concern to us here, as any lack of morality along those lines are not an issue under our definition of "in need of assistance."

The evidence shows that on several occasions petitioner has abandoned her two children, aged one year and four months, and six months, respectively. The children were, on one such abandonment for the continuous period between August 5, 1960 and March 10, 1961 (216 days), under the care and supervision of the Albertina Kerr Home, Portland, Oregon, at a cost to the Home of $2160.-00. This amount has never been repaid.

Anna Huff, a Welfare worker employed by the Bureau of Indian Affairs at Carson City, Nevada, testified that on September 15, 1961, she visited the petitioner's three children at the home of the petitioner's grandmother at Nixon, Nevada (reservation). The whereabouts of petitioner could not be ascertained. On June 26, 1961, the children were with a Mrs. Raymond, their aunt, to whom an emergency requisition for groceries was issued. On July 6, 1961, the children were removed from the reservation and placed in foster homes under the supervision of the Nevada Welfare Department; at the time of the trial on December 1, 1961, the cost to the Department for the children's care was approximately $1,000.00, none of which has been repaid by petitioner. These periods of abandonment are of paramount interest to us because of petitioner's representations to the trust officer of her trustee, as herein later pointed out.

The evidence shows that petitioner is the proud owner of not only one automobile, but two. During the period of interest to us, she purchased a Chrysler automobile at a price in excess of $5,-000.00.

Of decisive nature is the testimony of the mentioned trust officer. At this juncture, it must be noted that the trust officer candidly acknowledged that after a hindsight look and review of the total

amount of cash paid to petitioner upon her dire and emergency requests, they were surprised and "think we paid out too much" and now believe they would have done differently and " * * * is not the way we would operate in the future." I gathered the impression that this hindsight second look made the trustee's face a bit red. However, the trust officer feels they were justified in the advances because of "her pattern of life." Let it be noted that nothing in this memorandum is either a condonation or a condemnation of the trustee's advances from petitioner's estate. If there be a question in this regard, it is without my comment left until another day.

■ The trust officer testified that during the period of between May 9, 1961, and November 15, 1961 (approximately six months), the trustee advanced to petitioner the total sum of $5,720.19. These advances were made upon the petitioner's urgent telegraphic or long distance telephone (Idaho, Oregon, and California) requests. These requests were emergencies, either for self and children maintenance, automobile repair, or other money needs. During the time of these advances by trustee, the children were not being supported by petitioner, and the money was spent on petitioner's own needs and desires, notwithstanding the outstanding accounts for the children's care. These expenditures cannot be characterized as ones for reasonably necessary needs, but on the contrary, were made by petitioner's moneywise wastefulness and her lack of understanding of values or worths, her mentioned instability and inclination to be taken advantage of by artful and designing persons. Therefore, I find that petitioner is not able to handle her own affairs in normal business competitive practice without the help of a financial advisor or custodian. I have no doubt, and conclude that petitioner was, at the time of the defendant secretary's findings and action, and now is "in need of assistance" within the purview of Title 25 U.S.C.A. § 564n., supra, and that the trustee should be continued.

Petitioner's petition and her cause should be dismissed without cost to either party. Counsel for defendant should submit proposed findings of fact, conclusions of law and decree in conformity with his pretrial contentions and this memorandum within 15 days from the date hereof. Counsel for petitioner may have 15 days after service of such proposals within which to file objections thereto.