Grover REED, Plaintiff,

v.

The UNITED STATES NATIONAL
BANK OF PORTLAND,
Defendant.

and

United States of America,
Intervenor.

Civ. No. 61–318.

United States District Court
D. Oregon.

Jan. 31, 1963.

Forrest E. Cooper, Lakeview, Or., J. Anthony Giacomini, Klamath Falls, Or., Kell & Alterman, Jack Schwartz, Portland, Or., for plaintiff.

Cleveland C. Cory and Frederick H. Torp, Portland, Or., for defendant.

Sidney I. Lezak, Acting U. S. Atty., Portland, Or., for intervenor.

EAST, District Judge.

The plaintiff, a citizen of the State of California, is the father of the infant Gregory S. Reed, who died on December 24, 1954. The plaintiff is not, but Gregory's mother is, a member of the Klamath Indian Tribe. The deceased infant was an enrollee upon the final tribal roll of the Klamath Tribe, which was closed by the Secretary of the Interior (Sec-retary) on August 13, 1954, and published in the Federal Register on November 21, 1957. The plaintiff and the mother are the sole surviving heirs of the deceased infant son and distributees of his estate and as such the owners in equal shares of their son's estate, which it now appears consists of an unsegregated interest in the communal property of the Klamath Indian Tribe of the value of probably in excess of the sum of $40,000.[1]

The defendant The United States National Bank of Portland (Trustee) is a citizen of Oregon and is a trustee for the use and benefit of the estate of said deceased infant and his heirs' undivided interest therein under the hereinafter mentioned trust agreement made by the Secretary pursuant to the Act of Congress generally known as the Klamath Termination Act (Act), 68 Stat. 718 (1954), as amended, §§ 564–564x.

Section 564d of the Act provides, *inter alia:*

"(2) Immediately after the appraisal of the tribal property and the approval of the appraisal by the Sec-retary, give to each member whose name appears on the final roll of the tribe an opportunity to elect to withdraw from the tribe and have his interest in tribal property converted into money and paid to him, or to remain in the tribe and participate in the tribal management plan to be prepared * * * in the case of members who are * * * deceased, the opportunity to make such election on their behalf shall be given to the person designated by the Secretary as the best person able to represent the interests of such member: (here follows procedures to contest such designation if any heir shall be aggrieved by the Secretary's designation)."

The Secretary designated the plaintiff "as the person best able to represent the

---

1. " * * * the rights or beneficial interests in tribal property of each person whose name appears on the roll shall constitute personal property which may be inherited or bequeathed, * * * " § 564c of the Act.

interest of * * *" his deceased son. The plaintiff does not contest that designation.

During the months of February or March, 1958, the Secretary forwarded and the plaintiff received a ballot labeled "Official Election Form."[2] This ballot was in clear, concise language and gave the plaintiff opportunity to elect on behalf of his infant son whether

"(a) To remain in the tribe and share in the tribal management plan, or

"(b) To withdraw from the tribe and to have the member's share * * * converted into cash."

Plaintiff failed to cast the ballot by Xing his choice and returning it as requested, or to take any other relative action in the matter whatsoever. The Secretary, by reason of the plaintiff's failure to make any election, determined that the interests of the deceased infant should remain a part of the tribal assets. On March 3, 1959, the Secretary and the Trustee entered into an agreement of management trust whereby the Trustee has continuously since administered said deceased infant's interests.

The plaintiff contends that since he is not a member of the Klamath Tribe he is not subject to the restrictive terms of the Act, as he has "inherited" and been

2.  "KLAMATH MANAGEMENT SPECIALISTS
139 South 7th Street
Klamath Falls, Oregon

This form must be signed in the presence of a notary public.

KLAMATH TRIBE OF INDIANS      Form No. 2: Election Form
(To be executed by designated electors for minors, incompetent adults or deceased persons)

1. Klamath member's name      Reed, Gregory Silas

2. Final Roll Number      1643

3. I, _____ Grover Reed _____, having been designated by the Secretary of the Interior to elect in behalf of the Klamath member listed above, make the following election:

A. I elect for the member to remain in the tribe and have his share of tribal assets placed under a management plan substantially in the form of the plan dated      Feb—1958, of which I have received a summary which is satisfactory as to form and content.

B. I elect for the member to withdraw from the tribe and to have the member's share of tribal assets converted into cash.

(Make an X in the box in front of your choice.)

Signed_____
(Name of person making choice)

NOTICE: Electors must have the following part of this form completed by a notary public.

Subscribed and sworn to before me this _____ day of _____, 1958.

_____
Notary Public
My Commission Expires_____

(SEAL)

This form signed by the elector      AND A NOTARY PUBLIC, must be returned to 139 S. 7th Street, Klamath Falls, Oregon. You must mail the completed form by   Apr 21  , 1958. Failure of an elector to act in behalf of the member for whom he is designated to elect will result in such member remaining in the tribe because no election was made for him and his share of tribal assets will be placed under the final plan of management."

vested with a half interest in the "personal property" of his deceased son, represented by the son's "rights or beneficial interest in tribal property." Therefore, the retention and management of his half interest in his son's share in the tribal properties by the defendant, as Trustee aforesaid, is violative of his Constitutional rights.

■ It is true that plaintiff personally is not subject to any of the provisions of the Act in the sense that it deals with the Klamath Indians and their tribal property; however, Gregory was an enrollee and at the time of his death was entitled (eventually, after the establishment of administrative procedures) either by himself or through an appropriate legal representative "to elect to withdraw from the tribe and have his interest in tribal property converted into money and paid to him, or to remain in the tribe * * *." However, death intervened, and through inheritance the plaintiff now claims Gregory's shoes; so be it, but he must stand in them. We will therefore consider what was necessary for Gregory, and for that matter any enrollee on the tribal roll, to do under the provisions of § 564d in order to have "his interest in tribal property converted into money and paid to him."

■■ Prior to the effect of the Act, Gregory, as all members of the tribe, adult or minor, had an interest in the communal or tribal property of the tribe, although for historical and other sociological reasons were considered to be, frankly, second-class citizens, and the government felt it necessary to hold them, solely because of their membership in the race, under a guardianship and ward status. The intention of Congress and the purpose of the Act was to at long last terminate this governmental guardianship-ward status and control solely because of "membership in a given race" and let the member, if he wished and so elected, withdraw from the community of the tribe and have his share of the communal properties paid over to him in cash for his own management and use; restrictions to individual management and control to be continued only because of individual wasteful proclivities or disabilities.[3]

■ Since Gregory had always been a member of the tribe, he did not have to make and take affirmative decision and action in order "to remain in the tribe." He would have remained in the tribe by doing nothing. On the other hand, Gregory was, by § 564d, given "an opportunity to elect to withdraw from the tribe" and have his property in cash. To acquire this new status, it was necessary to take affirmative position and action; namely, consider a proposed management plan of tribal property, as submitted by the Secretary, and then "elect to withdraw." To construe the intent of Congress as requiring a member of the tribe to cast a ballot either to withdraw or to remain is absurd. There can only be an election to withdraw. If one is born a member of an Indian tribe, one has no choice and will remain a member of the tribe unless he chooses to withdraw. Continued membership in the tribe necessarily accedes to the Secretary's plan of management.

Gregory could not elect for himself, and under the terms of § 564d the Secretary gave the deceased Gregory's "opportunity to elect to withdraw" to plaintiff, to exercise "on (Gregory's) behalf."

■ Since the plaintiff failed to in anywise respond to the ballot which was presented to him for his action under his designation to do so by the Secretary, and particularly failed "to elect to withdraw" and to have Gregory's share of tribal assets converted into cash, Gregory's interest had to remain in status

---

3. The Act is Constitutional. Tobey v. Udall, 202 F.Supp. 319 (D.Or.1962); Crain v. First National Bank, 206 F. Supp. 783 (D.Or.1962); Foster v. First National Bank, 213 F.Supp. 884 (D.Or. 1962).

quo; that is, in the tribe, subject to the Secretary's plan of management.

While the plaintiff does not specifically attack the form or the substance of the Secretary's election form presented to the plaintiff, the court has nevertheless reviewed the same, the showing made with regard thereto, and the proposed plan, and concludes that the Secretary had substantially complied with the duties required of him in that respect by the Act and that the resultant requirement on the part of plaintiff to take affirmative action with reference to the ballot was reasonable and in nowise deprived the plaintiff of any property without due process of law. The Secretary had no alternative but to treat the interests of Gregory as participating "in the tribal management plan" as developed.

Whether a member of the Klamath Tribe having in the first instance failed to elect to withdraw from the tribe and having remained in the tribe to participate in tribal management can at a later date elect to withdraw and have his interests converted into cash and paid to him would appear to require answer by Congress. In any event, that question is not reached or decided here.

Finally, the court concludes that the plaintiff's motion for summary judgment should be denied and that the defendant's cross-motion for summary judgment, joined in by the intervenor, should be granted.

The court also concludes that the defendant is entitled to recover from its trust funds herein a reasonable sum as attorney's fees for defending its trust.

The issue of fixing of the amount of such attorney's fees is segregated and withheld from the foregoing determination of issues. The issue of fixing such amount of attorney's fees is resubmitted to counsel for the parties for attempted agreement. In absence or want thereof, the issue may be set for determination by the court on application of the defendant.