Irvin OTRADOVEC, Genevieve Otradovec, Louise Fowler, James White, Plaintiffs,

v.

FIRST WISCONSIN TRUST COMPANY OF MILWAUKEE, WISCONSIN, a Wisconsin Trust Company Bank, Defendant.

No. 70–C–488.

United States District Court, E. D. Wisconsin.

Feb. 16, 1971.

David J. Ross, Wisconsin Judicare, Madison, Wis., for plaintiffs.

Gibbs, Roper & Fifield by Thomas B. Fifield, Clay R. Williams, Milwaukee, Wis., for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The defendant has moved to dismiss the complaint. To resolve such motion, some background of this case should be described.

On April 30, 1961, federal supervision over the Menominee Indian tribe of Wisconsin officially terminated, pursuant to the provisions of the Menominee Termination Act, 25 U.S.C. §§ 891–902. The method by which the termination was accomplished followed the provisions of a plan prepared by representatives of the Menominee tribe and approved in a modified form by the secretary of the interior. This plan was published in 26 Fed.Reg. 3726 (1961), and is appended to the plaintiff's complaint as "Schedule B". An especially full discussion of the events leading up to termination is found in State v. Sanapaw, 21 Wis.2d 377, 124 N.W.2d 41 (1963).

The termination resulted in the transfer of former tribal property, including land, to a corporation called Menominee Enterprises, Inc. All stock in the corporation is held in the form of a single stock certificate by a seven-man voting trust; the seven trustees are empowered to elect the board of directors of the corporation. Every person enrolled as a member of the Menominee tribe, pursuant to the provisions of 25 U.S.C. § 893, has been issued voting trust certificates evidencing the common stock of the corporation. In addition, the corporation has issued each member an income bond with a par value of $3000.

The termination plan also provided for the cessation of the voting trust in ten, twenty, or thirty years "by [vote of] the tribal members who become holders of the voting trust certificates."

Another provision of the termination plan created the Menominee Assistance Trust to protect the interests of those former members of the tribe, their descendents, or lawful transferees who "are either under twenty-one (21) years of age or [are] otherwise deemed in need of assistance." The trust agreement is attached to the plaintiffs' complaint as "Schedule A". The First Wisconsin Trust Company, the defendant in this action, is the trustee designated by both the termination plan and the trust agreement. As trustee, the defendant holds and can vote the voting trust certificates on behalf of its beneficiaries; the defendant also holds the beneficiaries' income bonds and United States savings bonds.

The plaintiffs in this action are parents of beneficiaries of the Menominee Assistance Trust. They contend that the trust is invalid because it exercises "guardian-like powers over the beneficaries" without adhering to state statutory provisions regulating the appointment of guardians. This, the plaintiffs aver,

"constitutes a denial of plaintiffs' right to the full and equal benefit of all laws and proceedings for the secu-

rity of persons and property as is enjoyed by the white citizens of the State of Wisconsin, in violation of 42 U.S.C.A. sec. 1981."

The complaint also alleges:

"14. That the creation and operation of the Menominee Assistance Trust also constitutes a denial of plaintiffs' right to hold and convey personal property to the same extent as is enjoyed by white citizens of the State of Wisconsin, in violation of 42 U.S.C.A. sec. 1982.

"15. That the creation of the Menominee Assistance Trust was a wanton and flagrant disregard of plaintiffs' rights, constituting invidious discrimination against the Menominee Indian plaintiffs, further relegating them to second class citizenship."

Finally, the plaintiffs contend that at the annual meeting of the beneficiaries, the defendant, allegedly the holder of approximately 20% of the voting trust certificates, will vote against abolition of the voting trust. This will be done, the plaintiffs argue, "even though the plaintiffs are informed and believe that abolition of the Voting Trust is in the best interests of the plaintiffs."

The complaint seeks (1) a declaration that the Menominee Assistance Trust is invalid and a direction that the defendant turn over all assets held by it for minor beneficiaries to properly appointed guardians and, (2) an order requiring that the defendant turn over to this court all assets held by the defendant on behalf of alleged incompetents for whom no judicial determination of competency has been made, and that such judicial determination be made as soon as possible.

Because it is my conclusion that the complaint fails to state a claim upon which relief can be granted, the defendant's motion to dismiss must be allowed, and it will not be necessary to discuss any of the other grounds advanced by the defendant in its motion.

As already noted, the plaintiffs allege that their action is authorized by 42 U.S.C. §§ 1981 and 1982. They contend that the Menominee Assistance Trust is violative of their fourteenth amendment rights in that the trust exists solely because the beneficiaries are Indians; thus, the plaintiffs argue in their brief, "the Menominees * * * are being denied rights granted to white citizens similarly circumstanced."

A like argument was made in Crain v. First National Bank of Oregon, Portland, 324 F.2d 532 (9th Cir. 1963). The plaintiffs in *Crain*, who were enrolled members of the Klamath Indian tribe, brought an action for a declaratory judgment contending that "the provisions of the Klamath Termination Act, 25 U.S.C. §§ 564–564x, providing for the placing of funds of Indians determined by the Secretary of the Interior to be in need of assistance in private trusts [are] unconstitutional." They urged that 25 U.S.C. § 564n, which authorized the creation of a trust, violated their fifth amendment rights in that § 564n "[restricted plaintiffs'] use of their property solely because of Indian ancestry."

The court in *Crain* held that the trust provisions of the Klamath Termination Act were constitutional, stating (page 535):

"The thrust of [the plaintiffs'] argument is that once federal jurisdiction terminated on August 13, 1961, by Proclamation of the Secretary of the Interior, the guardian-ward relationship ended for all purposes and [the plaintiffs'] rights to handle their property must be determined as any other person's. Therefore, a determination by the Secretary of the Interior that they are in 'need of assistance' and the consequent establishment of private trusts over their property discriminated against them because of their Indian ancestry and is violative of the Fifth Amendment.

"Our answer is direct and simple Federal jurisdiction did not end on August 13, 1961, and the guardianship relation has not terminated for all purposes.

"Congress has the power to determine when, how and by what steps it will emancipate the Indian and whether the emancipation shall be complete or only partial. Tiger v. Western Investment Company, 221 U.S. 286, 31 S.Ct. 578, 55 L.Ed. 738 (1911); United States v. Nice, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192 (1916); United States v. Waller, 243 U.S. 452, 37 S.Ct. 430, 61 L.Ed. 843 (1916); Brader v. James, 246 U.S. 88, 38 S.Ct. 285, 62 L.Ed. 591 (1917). This right of the Government, acting through Congress, to exercise continued partial guardianship and to gradually terminate that relationship, was established and set forth fully in the Waller case, supra."

See also Reed v. United States National Bank of Portland, 213 F.Supp. 919 (D.Or.1963); Foster v. First National Bank of Oregon, Portland, 213 F.Supp. 884 (D.Or.1962); Tobey v. Udall, 202 F.Supp. 319 (D.Or.1962).

Even the Supreme Court's uncomfortable majority opinion in Korematsu v. United States, 323 U.S. 214, 216, 65 S.Ct. 193, 194, 89 L.Ed. 194 (1944), acknowledged that "all legal restrictions which curtail the civil rights of a single racial group are immediately suspect." However, the holdings of the Supreme Court—some of which are cited in *Crain* —make it clear that Congress holds the power to determine the course of the emancipation of Indians; such rulings are controlling as to the issues in the case at bar. In United States v. Waller, 243 U.S. 452, 459, 37 S.Ct. 430, 432, 61 L.Ed. 843 (1917), it is stated:

"The tribal Indians are wards of the Government, and as such under its guardianship. It rests with Congress to determine the time and extent of emancipation."

See also Cramer v. United States, 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622 (1923); United States v. Nice, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192 (1916); Bryan County, Oklahoma v. United States, 123 F.2d 782, 785 (10th Cir. 1941); Arenas v. United States, 60 F.Supp. 411, 419 n. 6 (S.D.Cal.1945).

The fact that federal supervision over the Menominee tribe has "terminated" does not mean that Congress has relinquished completely its authority over the affairs of the tribe. The trust which is the subject of the present action has clear Congressional authorization for its existence. 25 U.S.C. § 900 provides:

"Prior to the transfer pursuant to section 897 of this title, the Secretary shall protect the rights of members of the tribe who are less than eighteen [later extended by the trust agreement to members under 21 years of age], non compos mentis, or in the opinion of the Secretary in need of assistance in conducting their affairs, by causing the appointment of guardians for such members in courts of competent jurisdiction, *or by such other means as he may deem adequate.*" (emphasis added)

The agreement entered into by the secretary and the defendant, and attached to the plaintiffs' complaint as "Schedule A" is the "other means" authorized by § 900. Like the trust in *Crain,* the trust in the present action represents part of a Congressional scheme to effect a "continued partial guardianship" over the affairs of certain members of the Menominee tribe. Under *Waller* and the other Supreme Court cases cited, this court cannot rule that this scheme results in "invidious discrimination against the Menominee Indian plaintiffs" so as to authorize a cause of action under 42 U.S.C. §§ 1981 and 1982.

Therefore, it is ordered that the defendant's motion to dismiss the plaintiffs' action be and hereby is granted