Irvin OTRADOVEC, Sr., et al., Plaintiffs-Appellants,

v.

FIRST WISCONSIN TRUST CO. OF MILWAUKEE, WISCONSIN, Defendant-Appellee.

No. 71–1293.

United States Court of Appeals, Seventh Circuit.

Jan. 14, 1972.

Joseph F. Preloznik, Warren A. Kenney, David J. Ross, Madison, Wis., for plaintiffs-appellants.

Thomas B. Fifield, Clay R. Williams, Charles A. Kranz, Gibbs, Roper & Fifield, Milwaukee, Wis., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, CUMMINGS, Circuit Judge, and CAMPBELL, Senior District Judge.[1]

CUMMINGS, Circuit Judge.

This appeal is from the dismissal of a class action commenced by four Menominee Indians whose children are subject to the 1961 Menominee Indian Assistance Trust. The complaint was filed on behalf of the named and other parents and also on behalf of "minor, *non compos mentis,* or incompetent" beneficiaries of the Trust. The sole defendant was the Trustee. The gravamen of the complaint was that the Assistance Trust constitutes an invidious discrimination [2] against the Menominees and violates their rights under 42 U.S.C. §§ 1981 and 1982.

Federal supervision over the Menominee Indian Tribe of Wisconsin terminated at midnight on April 30, 1961, pursuant to the Menominee Termination Act of 1954 (25 U.S.C. §§ 891–902). Earlier in 1961, pursuant to 25 U.S.C. § 896, a Termination Plan for Menominee Indians was published in 26 Fed.Reg. 3746. The plan was prepared by representatives of the tribe and approved in a modified form by the Secretary of the Interior. One of the provisions of the plan created the Menominee Assistance Trust to protect the interests of those former members of the tribe, their descendants or lawful transferees who "are less than eighteen years of age, *non compos mentis,* or in the opinion of the Secretary [of Interior] in need of as-

sistance in conducting their affairs" (25 U.S.C. § 900). To protect such persons, Congress authorized the Secretary to cause the appointment of guardians or use "such other means as he may deem adequate" (*idem*). Pursuant to that authorization, he selected the Menominee Assistance Trust as a suitable protective device. In the Assistance Trust Agreement which was entered into by the Secretary as Trustor and by the defendant First Wisconsin Trust Company as Trustee, he found that all Menominee beneficiaries between 18 and 21 were in need of assistance in conducting their affairs. He also included as beneficiaries those persons named in an attached schedule who were *non compos mentis* or in his opinion otherwise in need of assistance in conducting their affairs. The assets of the Trust consisted of the beneficiaries' voting trust certificates,[3] income bonds, and United States Savings Bonds.

The complaint prayed that the defendant be required to turn over all minors' property held under the Menominee Assistance Trust to guardians to be appointed by a Wisconsin court of competent jurisdiction and also to turn over to the district court all incompetents' property until their competency could be determined. The defendant filed a motion to dismiss, asserting that the complaint failed to state a claim upon which relief could be granted and asserting four other supporting grounds. The district court dismissed the action on the first ground. 322 F.Supp. 1082. The rationale of the opinion below was stated as follows:

"The [Menominee Assistance Trust] agreement entered into by the

---

[1]. Senior District Judge Campbell of the United States District Court for the Northern District of Illinois is sitting by designation.

[2]. The invidious discrimination allegation was not meant to raise a claim of deprivation of Fourteenth Amendment rights, for plaintiffs have conceded "there is no state action sufficient to raise a claim of Fourteenth Amendment violations."

[3]. Upon the April 30, 1961, termination of federal supervision over the Menominee Indians of Wisconsin, their former tribal property was transferred to Menominee Enterprises, Inc., whose stock was held by a 7-man voting trust. Each member of the Menominee Tribe was issued voting certificates evidencing the common stock of the corporation. See 25 U.S.C. § 893.

secretary and the defendant, and attached to the plaintiffs' complaint as 'Schedule A' is the 'other means' authorized by § 900. Like the trust in *Crain*,[4] the trust in the present action represents part of a Congressional scheme to effect a 'continued partial guardianship' over the affairs of certain members of the Menominee tribe. Under *Waller* and the other Supreme Court cases cited,[5] this court cannot rule that this scheme results in 'invidious discrimination against the Menominee Indian plaintiffs' so as to authorize a cause of action under 42 U.S.C. §§ 1981 and 1982." (322 F. Supp. at 1085.)

We affirm the dismissal.

Plaintiffs argue that the Assistance Trust violates 42 U.S.C. §§ 1981 and 1982 [6] because it was used in lieu of the provisions for guardianship contained in chapter 319 of the Wisconsin statutes. Plaintiffs develop their arguments as follows: First, they assert that the guarantees of 42 U.S.C. §§ 1981 and 1982 apply to American Indians. Second, they contend that these statutes protect against abridgement of their guarantees

through discrimination perpetrated by the Federal government and its agents, specifically here the Secretary of the Interior and the trustee of the Assistance Trust, defendant First Wisconsin Trust Company. See Jones v. Alfred H. Mayer Co., 392 U.S. 409, 88 S.Ct. 2186, 20 L. Ed.2d 1189. Third, Sections 1981 and 1982 are said to obligate the Secretary of the Interior and the private trustee appointed by him to treat terminated Menominee Indians in precisely the same manner as the State of Wisconsin treats its similarly situated white citizens. Fourth, say plaintiffs, since Wis. Stat.Ann. § 319.09 (1958), providing for the appointment of guardians, would have governed the disposition of white minors' property under like circumstances,[7] the Secretary was obligated to utilize that state procedure, and his creation of the Menominee Assistance Trust (and the defendant's administration of that trust) in its stead constitutes a violation of Sections 1981 and 1982.[8]

We have considerable difficulty in accepting plaintiffs' dialectic. Assuming arguendo the first point, and assuming the second as an abstract proposition, it

---

4. Crain v. First National Bank of Oregon, Portland, 324 F.2d 532 (9th Cir. 1963).

5. United States v. Waller, 243 U.S. 452, 459, 37 S.Ct. 430, 61 L.Ed. 843; Cramer v. United States, 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622; United States v. Nice, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192.

6. These Sections are derived from the Civil Rights Act of 1866 and 1870. Section 1981 provides:
    "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."
    Section 1982 provides:
    "All citizens of the United States shall have the same right, in every

State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

7. Since the position of Menominee Indians undergoing termination is indeed unique, it is questionable how plaintiffs can hypothesize the treatment of white minors under Wisconsin law who are in "like circumstances." That ·is, it may not be fair to ignore the fact that Menominee minors were being given property as part of the singular phenomenon of a termination of federal jurisdiction over the tribe and to opine that a white minor being given property is similarly situated.

8. Plaintiffs are not entirely clear on why even on their theory of the case Sections 1981 and 1982 require the Secretary to utilize the procedure embodied in Wis. Stat.Ann. § 319.09 (1958) and would not be satisfied by his utilization of a guardianship procedure *in pari materia* with the Wisconsin statute. But see 25 U.S.C. § 893.

seems clear that in creating the Menominee Assistance Trust, the Secretary was simply acting under the Congressional authorization to use "such other means as he may deem adequate" to protect the enumerated classes of tribal members. 25 U.S.C. § 900. In 25 U.S.C. § 897 Congress explicitly recognized the suitability of the Secretary's using a private trust to hold tribal property upon termination of the United States' trusteeship, so that the Secretary's use of a private trust would seem well within his discretion under 25 U.S.C. § 900. If the Secretary was obligated to use no other means in exercising his discretion than the Wisconsin Guardianship statute, as plaintiffs contend, then the authorization to use "other means" was entirely meaningless since the preceding phrase in 25 U.S.C. § 900 also authorized the Secretary to "[cause] the appointment of guardians for such members in courts of competent jurisdiction."

■ Plaintiffs nevertheless argue for such a strained construction on the theory that an investiture of discretion to use other means than Wis.Stat.Ann. § 319.09 (1958) would constitute a repeal by implication of 42 U.S.C. §§ 1981 and 1982, thus running afoul of the Due Process Clause of the Fifth Amendment by analogy to Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830.[9] While we appreciate the salutary principle of construing statutes so as to avoid facing a latent constitutional question, that principle cannot be stretched to the point of robbing legislation of its plain meaning. Welsh v. United States, 398 U.S. 333, 354–355, 90 S.Ct. 1792, 26 L. Ed.2d 308 (Harlan, J., concurring); Aptheker v. Secretary of State, 378 U.S. 500, 515, 84 S.Ct. 1659, 12 L.Ed.2d 992; Moore Ice Cream Co. v. Rose, 289 U.S. 373, 379, 53 S.Ct. 620, 77 L.Ed. 1265. We conclude that 25 U.S.C. § 900 clearly authorized the Secretary to create and the defendant to administer the Menominee Assistance Trust. Crain v. First National Bank of Oregon, Portland, 324 F.2d 532, 537–538 (9th Cir. 1963). In so concluding we express no opinion whatever on whether there is any conflict between 25 U.S.C. § 900 and 42 U.S.C. §§ 1981 and 1982.[10]

■ The single question which remains then is whether 25 U.S.C. § 900, which we hold authorizes the trust at issue here, violates the Due Process Clause of the Fifth Amendment. It would be constitutionally infirm only if it authorized an invidious discrimination. We note the statute's constitutionality has been upheld elsewhere, Crain v. First National Bank of Oregon, Portland, 324 F.2d 532, 535–537 (9th Cir. 1963), but find the issue not ripe for our consideration. See Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L. Ed.2d 989; United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S. Ct. 556, 91 L.Ed. 754; Hinton v. Udall, 124 U.S.App.D.C. 283, 364 F.2d 676, 678–681 (1966).

9. Even if we were to accept plaintiffs' assertion that 25 U.S.C. § 900, construed as authorizing the Assistance Trust pulls back on rights granted in 42 U.S.C. §§ 1981 and 1982, that does not automatically bespeak its unconstitutionality. In Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830, the Supreme Court found violative of the Fourteenth Amendment an amendment to the California Constitution "which [did] not just repeal an existing law forbidding private racial discriminations" but "was *intended* to authorize, and does authorize, racial discrimination * * *." 387 U.S. at 380–381, 87 S.Ct. at 1634 (emphasis supplied). Plaintiffs have admitted that Congress could not have intended to restrict rights guaranteed in 42 U.S.C. §§ 1981 and 1982 by enacting 25 U.S.C. § 900. Moreover, the *Reitman* Court stated the constitutionality of the repealing law is properly adjudged "in terms of its 'immediate objective,' its 'ultimate effect' and its 'historical context and the conditions existing prior to its enactment.'" 387 U.S. at 373, 87 S.Ct. at 1630. Thus it is clear that "repeal" is not tantamount to infirmity.

10. Plaintiffs themselves concede that "the applicability of §§ 1981 and 1982 might change, depending on the circumstances of a particular case."

Article III(C) of the Menominee Assistance Trust Agreement provides in part as follows:

\* \* \* \* \* \*

"The Trustee shall terminate the trust as to any Beneficiary other than a minor and distribute to such Beneficiary his portion of the trust assets upon a finding by the Trustee or a court of competent jurisdiction, upon application by the Trustee or such Beneficiary, that such Beneficiary is not in need of further assistance in conducting his affairs. The Trustee may terminate the trust as to any Beneficiary, regardless of age or the Beneficiary's ability to conduct his own affairs, if in the Trustee's discretion the continuation of the trust as to such Beneficiary is undesirable or unnecessary by reason of the out-of-state residence of the Beneficiary, an excessive reduction in number of Beneficiaries under this trust, or any other similar cause deemed sufficient by the Trustee: Provided, That the Trustee shall distribute the portion of the assets held for any such Beneficiary in need of assistance in conducting his affairs to a legal guardian, conservator, successor trustee or other person legally impowered to receive and administer such assets."

\* \* \* \* \* \*

Plaintiffs who are so disposed [11] may apply to the Wisconsin courts under Wis. Stat.Ann. § 319.09 (1958) for appointment as guardians of their children. Upon such appointment under Article III (C) of the Assistance Trust Agreement, such plaintiffs may request defendant to terminate the trust as to their children and to distribute the children's assets to them as guardians.[12] Thus Article III (C) may give the plaintiffs precisely the relief requested in this action, and show to be non-existent the subject of their constitutional claim against the defend-ant. Without expressing any opinion on the merits, we therefore decline to adjudicate a hypothetical controversy. We will not pass on any additional points presented only in oral argument. United States v. White, 454 F.2d 435 (7th Cir., decided November 22, 1971).

Since we agree with the district court that this complaint fails to state a claim upon which relief can be granted, we need not consider the remaining grounds raised by defendant in support of the judgment below.

Affirmed.

11. Affidavits attached to the defendant's motion to dismiss show that not all parents of minor beneficiaries of the Trust desire termination of the Trust.

12. An affidavit of a trust officer of defendant attached to the motion to dismiss shows that of the minor Trust beneficiaries, more than one-half have already had guardians appointed.