474

[Civ. No. 8953. First Appellate District, Division One.—July 2, 1934.]

LUIGI MARRE LAND & CATTLE COMPANY (a Corporation) et al., Respondents, v. RAYMOND ROSES et al., Appellants.

Samuel W. McNabb, United States Attorney, and Ignatius Parker and Clyde Thomas, Assistant United States Attorneys, for Appellants.

C. P. Kaetzel for Respondents.

KNIGHT, J.—Plaintiffs as owners of the record title to 6,053 acres of land in San Luis Obispo County deraigned from a patent theretofore issued by the United States government brought this action to quiet title thereto. Defendants asserted title to approximately five acres thereof based on allegations of adverse possession for more than twenty years. Upon trial the court found against defendants and entered judgment in favor of plaintiffs. No motion for new trial was made, nor was any appeal taken from the judgment. ▆ Later, however, the federal district attorney for the southern district of California and his assistant joined as associate counsel with the firm of attorneys who had represented the defendants throughout the litigation; and

476

approximately five and a half months after the entry of the judgment and more than three months after it had become final by failure to appeal therefrom, notice of motion was given on behalf of the defendants to vacate the judgment under the authority of section 473 of the Code of Civil Procedure and grant defendants permission to file an amended answer, a copy of which was attached to the notice of motion, or to allow defendants to move for a new trial. The theory upon which it was sought to have the trial court vacate the judgment was based upon the claim that the defendants were California Indians, and that therefore they were "wards of the federal government, incompetent in law to take care of their own affairs. That the federal government is the proper guardian to protect their interests under such circumstances . . . " (citing *Cramer* v. *United States,* 261 U. S. 219 [43 Sup. Ct. 342, 67 L. Ed. 622]), and that "being incompetents, judgment against them is not binding . . . " (citing *Winslow* v. *McCarthy,* 39 Cal. App. 337 [178 Pac. 720]). The motion was heard on May 11, 1931, and by the court denied; and this appeal was taken from the order made to that effect.

At no time during the course of the trial was it intimated by the defendants themselves, their pleadings, their counsel, or the evidence, that they were Indians; and evidently such was the main disputed question of fact presented for determination by the motion to vacate. The first and only assertion to the effect that they were Indians was made in the proposed amended answer, which was verified by the assistant federal district attorney and in an affidavit made by him in support of the motion; and in both documents such assertion appears to be based on information obtained from the defendants themselves; whereas in apparent contradiction thereof it was averred in the affidavit filed at the same time by defendants' counsel who represented them throughout the trial that at no time did the defendants inform him they were Indians, nor was he aware at any time that such was the fact. It would seem, therefore, that the uncertain state of the evidence upon this material question of fact would preclude interference on appeal with the adverse conclusion reached thereon by the trial court.

But even assuming that defendants are Indians, such fact alone did not render them legally incompetent to take

care of their own affairs, or exempt them from the operation of state laws or the jurisdiction of state courts as to matters respecting their civil rights, nor does the case of *Cramer* v. *United States, supra,* upon which defendants rely, so hold. The facts thereof, as they appear from the opinion, were as follows: In 1904 the United States government issued to the successor in interest of the Central Pacific Railway Company a patent to a series of odd sections of land theretofore granted to said railroad company pursuant to an act of Congress passed in 1866, which excepted from the grant such lands as "shall be found to have been granted, sold, reserved, occupied by homestead settlers, preempted, or otherwise disposed of"; and some twenty years after the issuance of the patent the government in its own right and as guardian of three Indians (whose race was not questioned) brought an action to cancel the patent in so far as it purported to convey 175 acres or more which were inclosed with a fence and since the year 1859 had been actually and continuously occupied by said Indians and their parents as home sites. The patentee challenged the government's authority to maintain the suit in so far as it purported to do so in behalf of said Indians; but in answer thereto the Supreme Court said that the general doctrine had been laid down by that court "that the Indian tribes are wards of the nation, communities dependent on the United States", and that this duty of protection and power extended to individual Indians even though they may have become citizens. In other words, the action was one instituted by the government to enforce a governmental right, namely, the cancellation of a patent theretofore issued by it, which included certain lands expressly exempted by the provisions of the congressional act authorizing the issuance of such patent. We have no such situation here. Moreover, even though the doctrine declared in that case respecting the protectorate powers of the government over Indians of the tribal type there described may be extended to cover the kind of case we have here, which involves only private rights, litigated in state courts and under state laws, the ruling of the trial court in denying defendants' motion, in our opinion, must nevertheless be sustained because in order to establish their legal status as wards of the federal government within the scope of such

doctrine it was necessary for defendants to prove to the satisfaction of the trial court that they were the descendants of an Indian tribe entitled to such protectorate policies; also that they or their ancestors were occupying the lands as home sites at the time of the issuance of the patent by the government to the predecessors of plaintiffs, and had been so occupying the same continuously since then. Evidently they failed to make such proof.

In this respect the transcript shows that at the opening of the trial defendants stipulated that plaintiffs were the owners of the record title to the premises described in the complaint deraigned as claimed by them through mesne conveyances from a patent theretofore issued by the United States government to their predecessors in interest; but the date of the patent was not disclosed. It was further stipulated that the entire tract had been assessed to plaintiffs and their predecessors; that they had paid all taxes thereon, and that the acreage claimed by defendants was included in the larger tract. In their answers defendants alleged that for more than twenty years they had been in the actual, open, notorious, exclusive and continuous possession, under claim of right as their own and adverse to plaintiffs' claim, of approximately five acres of said tract of land; and that since the year 1914 the portion so occupied by them had been inclosed with a substantial fence. The evidence introduced in support of such allegations consisted of the testimony given by the defendant Mario Roses, and her son, Raymond Roses. Mario Roses stated she was born on the acreage claimed by them; but she was uncertain as to the year of her birth. She said at first that she was sixty-four years old, and about two years older than her brother, the defendant Joe Baylon; but afterwards she stated her brother was seventy-nine; furthermore she said that her son first entered upon the property to live when he was eight years old. The son testified, however, that all three, his mother, his uncle Joe Baylon, and himself, went on the property for the first time in 1898; that his stepfather was living there at the time; also that he was eight years old when they went there, and that he was thirty-eight at the time of the trial. They all believed, so he stated, that the acreage on which they settled was government land. His uncle, Joe Baylon, was not a witness, but it

was stipulated that if called as such his testimony would be substantially the same as that given by Raymond Roses. In reviewing the trial court's ruling, the testimony given by Raymond Roses must of course be taken as controlling; and that being so, any possible application to the present case of the doctrine of *Cramer* v. *United States, supra,* is excluded. True, in the proposed amended answer, which as stated was verified by the assistant federal district attorney, it is alleged "that the defendants herein and their ancestors for . . . more than a hundred years last past have been in the undisturbed occupation, use and possession" of the acreage claimed by defendants. Obviously, however, such allegation is based on information and belief, and as will be seen the fact so alleged is in sharp conflict with the testimony given at the trial by the defendant Raymond Roses. Moreover and in any event, it nowhere appears from the record that defendants or any of them were occupying the disputed acreage at the time of the issuance of the patent, because, as above stated, the date of the issuance of the patent was not shown.

It is also contended that prior to the year 1878 in order to acquire title by adverse possession it was not essential to prove payment of taxes, and that therefore the court erred in not awarding defendants judgment establishing in them title to the acreage claimed by them, because it is claimed, in support of the motion to vacate, "that the defendants, by themselves, as well as their ancestors", have been in possession of the land claimed by defendants for upwards of 80 years; also that the lands called for by plaintiffs' patent do not include the lands of these defendants. The above points and the remaining ones urged by defendants for reversal involve the question of the sufficiency of the evidence to support the findings and judgment, which can be dealt with only on an appeal from the judgment; and as stated no such appeal was taken.

The order appealed from is affirmed.

Tyler, P. J., and Cashin, J., concurred.