I am in agreement with the majority opinion as to the end result of this case; however, I am compelled to express my opinion on the issue of state court jurisdiction of Indians within the State of Mississippi. I think we should go further and leave no doubt that the state court has jurisdiction of cases involving all citizens of Mississippi, including Indians.
The Treaty at Doak's Stand on October 18, 1820 and another treaty on January 20, 1825 began the cession of land by the Choctaw Indians to the United States in which an agreement was made that the Choctaw tribe would move west of the Mississippi River and in which individual Choctaws desiring to remain in Mississippi could own their own land.
Finally, the Treaty at Dancing Rabbit Creek was made between the Choctaws and the United States on September 27, 28, 1830, which was considered to be the treaty existing between the parties. The parts of that treaty found in Hutchinson's Mississippi Code (1798-1848), Chapter 5, Indians, Art. 11, p. 121, which are pertinent to this case are as follows:
 "Article 11. Treaty at Dancing Rabbit Creek, between the Choctaws and United States — ceding the residue of their lands in Mississippi — 27 28 September, 1830. Ratified Feb. 24, 1831. — 7 Peters' Comp. 333.
 Whereas, the General Assembly of the State of Mississippi has extended the *Page 834 
laws of said state to persons and property within the chartered limits of the same, and the President of the United States has said that he cannot protect the Choctaw people from the operation of these laws; . ..
 * * * * * *
 . . . Choctaw nation of Indians consent and hereby cede to the United States, the entire country they own and possess east of the Mississippi River; and they agree to remove beyond the Mississippi River, as early as practicable; . . .
 * * * * * *
 Each Choctaw head of a family being desirous to remain and become a citizen of the States, shall be permitted to do so, by signifying his intention to the Agent within six months from the ratification of this Treaty, and he or she shall thereupon be entitled to a reservation of one section of six hundred and forty acres of land, to be bounded by sectional lines of survey; in like manner shall be entitled to one half that quantity for each unmarried child which is living with him over ten years of age; and a quarter section to such child as may be under ten years of age; to adjoin the location of the parent. If they reside upon said lands intending to become citizens of the States for five years after the ratification of this treaty, in that case a grant in fee simple shall issue; said reservation shall include the present improvement, of the head of the family, or a portion of it. Persons who claim under this article shall not lose the privilege of a Choctaw citizen, but if they ever remove are not to be entitled to any portion of the Choctaw annuity."
As can be determined by the language of the Treaty, the Choctaws, as a tribe, agreed to remove from Mississippi. The Choctaws who elected to remain in Mississippi did so not as a nation or tribe, but as individual landowners and as citizens of this state.
Prior to the Treaty at Dancing Rabbit Creek, but subsequent to the treaties of 1820 and 1825, the Mississippi Legislature passed the following acts:
 "Article 13. An Act to extend Legal Process into that part of the State now occupied by the Chickasaw and Choctaw Tribes of Indians, Feb. 4, 1829 . . 81.
 § 1. From and after the passage of this act, all process emanating from any court, judge, or justice of the peace, shall be extended into, and over all that tract of territory lying within the chartered limits of this state, which is now occupied by the Chickasaw and Choctaw tribes of Indians.
 Article 14. An act to extend the laws of Mississippi over the persons and property of the resident Indians, January 19, 1830.
 § 1. Their Government abolished. From and after the passage of this act, all the rights, privileges, immunities, and franchises, held, claimed, or enjoyed, by those persons called Indians, and their descendants, and which are held by virtue of any form of policy, usage, or custom, existing among said persons, not particularly recognises and established by the common law or statutes of the State of Mississippi, be, and the same are hereby wholly abolished, and taken away.
 § 2. Citizenship granted them. All the rights, privileges, immunities, and franchises, held and enjoyed by free white persons, inhabitants of the said state, be, and the same are hereby given, granted, and extended, to the said persons called Indians, and their descendants, in as full and ample a manner, as the same can be done by act of the General Assembly.
 § 3. Laws extended over them. All the laws, statutes, and ordinances, now in force in the said State of Mississippi, be, and the same are hereby declared to have full force, power, and operation, over the persons and property of and *Page 835 
within the territory now occupied by said Indians.
 * * * * * *
 § 5. Office of Chief abolished. Any person or persons who shall assume on him or themselves, and exercise in any manner whatever the office of chief, mingo, head man, or other post of power, established by the tribal statutes, ordinances, or customs, of the said Indians, and not particularly recognised by the laws of this state, shall, on conviction upon indictment, or presentment, before a court of competent jurisdiction, be fined in any sum not exceeding one thousand dollars, and be imprisoned any time not exceeding twelve months, at the discretion of the court before whom conviction may be had." Hutchinson's Mississippi Code (1798-1848), Chapter 5, Indians, Art. 13 14, pp. 135 136.
In the case of Fisher v. Allen, 2 How. 611 (1837), this Court held that the tribal laws and customs were abolished and that the laws of Mississippi were extended over the Indians in January, 1830.
In the case of Newman v. Doe, 4 How. 522 (1840) this Court said:
 ". . . The privilege of becoming a citizen was conferred on each head of a family, provided he signified his intention to the agent within six months after the ratification of the treaty. It became, therefore, the duty of the applicant to signify his intention. . . ." 4 How. at 555.
This Court said in Land v. Land, Sm. M.Ch. 158 (1843):
 ". . . Although the 2d section of the 3d article of the Constitution of the United States declares, that the judicial power shall extend to all cases, in law or equity, arising under treaties made by their authority, yet it does not confer exclusive jurisdiction upon the federal courts, in all such cases. The mere fact that the rights of the parties grew out of a treaty, cannot have the effect of ousting the jurisdiction of the Court, when both parties, and the subject-matter of the suit, are otherwise completely within its cognizance." Sm. 
M.Ch. at 169 170.
The United States Supreme Court pointed out in Choctaw Nation v. United States, 119 U.S. 1, 7 S.Ct. 75, 30 L.Ed. 306 (1886) that a specific act by the United States Congress on March 3, 1881, conferred jurisdiction upon the Court of Claims to try all questions of difference arising out of previous stipulations with the Choctaw Nation.
The case was to determine the amount of compensation, if any, which was due the Choctaw Nation as a result of the failure of the United States to live up to its obligations under the Dancing Rabbit Treaty of 1830. In deciding this issue the United States Supreme Court made the following observation:
 ". . . [U]nder the pressure of the demand for the settlement of the unoccupied lands of the state of Mississippi by emigrants from other states, the policy of the United States in respect to the Indian tribes still dwelling within its borders underwent a change, and it became desirable, by a new treaty, to effect, so far as practicable, the removal of the whole body of the Choctaw Nation, as a tribe, from the limits of the state to the lands which had been ceded to them west of the Mississippi river. To carry out that policy the treaty of 1830 was negotiated." 119 U.S. at 36-37, 7 S.Ct. at 95, 30 L.Ed. at 318. (Emphasis added)
Thus, the Supreme Court acknowledged the fact that no Choctaw tribe, as such, remained in Mississippi.
Sections 1321 and 1322, Indians, 25 U.S.C.A. (1968) giving the states, not having jurisdiction, consent to assume civil and criminal jurisdiction over Indian tribes do not apply to the case at bar. This is true because Mississippi has had jurisdiction *Page 836 
since 1830, and because there are no "Indian tribes" as such within this state; nor is there any "Indian country" or "Indian Reservation" within this state. "Indian tribe" is defined as ". . . any tribe, band, or other group of Indians subject to the jurisdiction of the United States and recognized as possessing powers of self-government; . . ." Indians, 25 U.S.C.A. § 1301, p. 116 (1968).
As stated, the "Choctaw tribe" was moved west of the Mississippi River as a result of the treaties of 1820, 1825 and 1830. The remaining Choctaws became citizens of the State of Mississippi by remaining in Mississippi of their own choice.
In Paul v. United States, 371 U.S. 245, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963), the United States Supreme Court said:
 "The power of the Federal Government to acquire land within a State by purchase or by condemnation without the consent of the State is well established. . . . But without the State's `consent' the United States does not obtain the benefits of Art. I, § 8, cl. 17, its possession being simply that of an ordinary proprietor. . . .
 "Thus if the United States acquires with the `consent' of the state legislature land within the borders of that State by purchase or condemnation for any of the purposes mentioned in Art. I, § 8, cl. 17, or if the land is acquired without such consent and later the State gives its `consent,' the jurisdiction of the Federal Government becomes `exclusive.' . . . In either event — whether the land is acquired by purchase or condemnation on the one hand or by cession on the other — a State may condition its `consent' upon its retention of jurisdiction over the lands consistent with the federal use. . . ." 371 U.S. at 264-265, 83 S.Ct. at 437-438, 9 L.Ed.2d 304-305.
See also James v. Davro Contracting Co., 302 U.S. 134, 58 S.Ct. 208, 82 L.Ed. 155 (1937).
An example of the necessity of state consent to federal jurisdiction is Section 5970, Mississippi Code 1942 Annotated (1952), which reads as follows:
 "Jurisdiction of the United States. — The United States of America is authorized to acquire by deed or conveyance, gift, will or otherwise lands for the purpose of roadways and parkways as set forth in this Act, but this consent is given upon condition that the State of Mississippi shall retain a concurrent jurisdiction with the United States in and over such lands so far that civil process in all cases and such criminal process as may issue under the authority of the State of Mississippi against any person charged with the commission of any crime, without or within said jurisdiction, may be executed thereon in like manner as if this consent had not been given. . . ."
The Federal District Court for the Northern District of Oklahoma held that where Congress has relinquished its superior power over Indians and their property located within a state, the Indians and their property become subject to state court jurisdiction. Bagby v. United States, 53 F.2d 260 (10th Cir., 1931), aff. 60 F.2d 80 (10th Cir., 1932).
In Luigi Marre Land Cattle Co. v. Roses, 139 Cal.App. 474,34 P.2d 195 (1934) the District Court of Appeals of California held that the fact that Indians are a party to a suit does not necessarily exclude state court jurisdiction.
The Wheeler-Howard Act of 1934, 48 Stat. at L. 984, does not apply to Choctaw Indians in Mississippi, because the last paragraph of said act defines Indian as one of Indian descent living in a tribe then under federal jurisdiction. The Choctaw Indians remaining in Mississippi after the Treaty at Dancing Rabbit Creek of 1830 are not members of an Indian tribe, and they were not under federal jurisdiction at the time of the passage of said act. *Page 837 
This is another reason why we should affirm the holding of the Circuit Court: There is grave doubt that Section 1322, Indians, 25 U.S.C.A., Ch. 15 (1968) is constitutional, if it is intended to apply to the Indians located in Mississippi.
Article I, Section VIII, Clause 17, U.S. Constitution, requires that in order to exercise exclusive legislative jurisdiction over lands purchased within a state, such jurisdiction must be assumed with the consent of the state in which the land purchased is situated.
Moreover, it will be readily observed that the organization of a civil and criminal jurisdiction for the benefit of certain citizens in a state is in effect the organizing of a state within an existing state. This procedure is contrary to Article IV, Section III, Clause 1, U.S. Constitution:
 "New States may be admitted by the Congress into this Union; but no new State shall be formed or erected within the Jurisdiction of any other State; nor any State be formed by the Junction of two or more States, or Parts of States, without the Consent of the Legislatures of the States concerned as well as the Congress."
Finally — since the Choctaw Indians who remained in Mississippi became citizens with all the rights and responsibilities of other citizens of Mississippi, an effort on the part of the Federal Government to set up a trial court to exercise jurisdiction over these Indians, as a tribe, is clearly in violation of the Fifth Amendment to the Constitution since non-Indian citizens are also entitled to due process of law. The Indian tribe left Mississippi and was firmly established in Oklahoma. The Choctaw Indian tribe is no longer a Mississippi tribe; therefore, to suggest that Mississippi citizens, who are non-Indian, should be required to pursue their claim for injury in an Indian court is unreasonable and, in my judgment, such a law is unconstitutional.
SUGG, J., concurs.