## CRAMER ET AL. *v.* UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 207.  Argued January 15, 16, 1923.—Decided February 19, 1923.

1. Lands definitely occupied by individual Indians were excepted from the Central Pacific grant of July 25, 1866, c. 242, 14 Stat. 239, as lands "reserved . . . or otherwise disposed of." P. 226.
2. Such possessory rights, though not recognized by any statute or other formal governmental action of the time, were protected by the settled policy of the Government towards the Indians. P. 229.
3. The Act of March 3, 1851, which required that claims of rights in lands in California derived from Spain and Mexico be presented for settlement within a specified time, and directed the Commission thereby created to inquire into the tenures of certain Indians, has no application to claims of individual Indians, not of those classes, and based on an occupancy not shown to have been initiated when the act was passed. P. 230.
4. The United States, as guardian of individual Indians who have occupied public land in accordance with its policy, may maintain a bill to cancel a patent illegally issued to another for the land so occupied. P. 232.
5. The six year limitation on suits by the United States to annul land patents is inapplicable when the suit is to protect the rights of Indians. P. 233.
6. The acceptance by government agents of leases from a patentee on behalf of Indian occupants, cannot estop the Government from maintaining the Indian's independent right to the land occupied by a suit against the patentee. P. 234.
7. The rights of one who occupies part of a subdivision of public land without laying claim to or exercising dominion over the remainder, are confined to the part occupied. P. 234.

276 Fed. 78, reversed.

APPEAL from a decree of the Circuit Court of Appeals reversing a decree of the District Court and. directing cancelation of a patent as to 360 acres of land, in a suit brought by the United States for that purpose on behalf of several Indians.

*Mr. C. F. R. Ogilby* and *Mr. Frank Thunen* for appellants.

The decree claims support in the policy of the Department of the Interior, but there is no precedent in the Department of the Interior; nor could such policy override the contrary intent declared by Congress and heretofore concretely applied by this Court.

The grant to appellants' predecessor does not except lands occupied by Indians. *Buttz* v. *Northern Pacific R. R.,* 119 U. S. 55; *United States* v. *Fitzgerald,* 15 Pet. 405.

There was never any tribal occupancy of this land, and the law never gave recognition to right of individual Indian occupancy until the Act of March 3, 1875. *Gritts* v. *Fisher,* 224 U. S. 640; *Sizemore* v. *Brady,* 235 U. S. 441; *United States* v. *Fitzgerald,* 15 Pet. 405.

The Court of Appeals has overlooked the distinction between Indian rights guaranteed by treaty and mere squatter privileges; it has given scant consideration to the *Buttz Case,* and has wholly ignored *Barker* v. *Harvey,* 181 U. S. 481.

We have direct and convincing evidence, not only in the earlier acts of Congress, but also in the congressional debates, where are reflected the history and spirit of the times, that Indian titles and possessory claims in California were, from the beginning of our state history, designed by Congress to be foreclosed and extinguished, except in so far as specific reservations might have been made for Indian accommodation. *Barker* v. *Harvey,* 181 U. S. 481; *Botiller* v. *Dominguez,* 130 U. S. 238; *Cherokee*

*Nation* v. *Georgia,* 5 Pet. 1; *Johnson* v. *McIntosh,* 8 Wheat. 543; 3 Kent, p. 380; *Thompson* v. *Doaksum,* 68 Cal. 593; *United States* v. *48 Pounds of Rising Star Tea,* 35 Fed. 403; *Worcester* v. *Georgia,* 6 Pet. 515.   Acts of March 3, 1851, 9 Stat. 631; August 30, 1852, 10 Stat. 56; March 3, 1853, 10 Stat. 238; July 31, 1854, 10 Stat. 352; March 3, 1855, 10 Stat. 698, 699; February 28, 1859, 11 Stat. 400; June 19, 1860, 12 Stat. 57; April 8, 1864, 13 Stat. 39; July 27, 1868, 15 Stat. 198; March 3, 1871 .(Rev. Stats., § 2079); March 3, 1873, 17 Stat. 633; January 12, 1891, 26 Stat. 712; March 1, 1907, 34 Stat. 1022, 1023; March 4, 1913, 37 Stat. 1007.   23 Cong. Globe, App. pp. 61, 362, 777; 24 Cong. Globe, p. 19; 25 Cong. Globe, p. 1082; Report Indian Commissioner, Sen. Doc., 38th Cong., 1st sess., vol. 3, p. 133; Cong. Globe, 1863–1864, pt. 2, p. 1209; Report, Commissioner .of Indian Affairs, 1890, p. xxx.

The evidence does not support the finding that the Indians occupied the land before the fee became vested in appellants' predecessor.

Upon failure of the Government's allegation that the land was within an Indian reservation, the cause abated for: (1) change of cause and parties; (2) incapacity of plaintiff to sue for want of interest; (3) lack of jurisdiction; and (4) because of prior action pending in the state court involving the changed issue.   *Dias* v. *Phillips,* 59 Cal. 293; *United States* v. *Waller,* 243 U. S. 452.   *United States* v. *Osage County,* 251 U. S. 128, and *Heckman* v. *United States,* 224 U. S. 413, distinguished.

These Indians entered as squatters.   Their claim is not based on occupancy initiated under any law of the United States; it is simply such adverse claim as any citizen might make to land patented to another.   The United States was neither legally nor morally bound to maintain them in possession of lands to which they made no claim prior to that of the Government; and since the

United States has conveyed its title, what circumstance
has arisen to impose upon it any obligation to the Indians
with reference to these lands? True, the Government
may owe the Indians the duty of protection, shelter and
sustenance; but even that may be questioned where the
Indians have adopted the civilized mode of life and have
not availed themselves of the protection and care afforded
them by the Government reservations. The failure of
this action by virtue of the Government's lack of interest
is well supported by precedent. *United States* v. *San
Jacinto Tin Co.,* 125 U. S. 273; *Curtner* v. *United States,*
149 U. S. 662.

The cause is barred by the statute of limitations.
*United States* v. *Chandler-Dunbar Co.,* 209 U. S. 447.
*Northern Pacific Ry. Co.* v. *United States,* 227 U. S. 355;
and *United States* v. *Whited and Wheless,* 246 U. S. 552,
distinguished.

The Government is estopped by its patent and by the
leases. *Peyton* v. *Smith,* 5 Pet. 483.

The appellants purchased while the leases from the
Company to the United States were in effect, and their
purchases were made expressly subject to the Govern-
ment's leasehold interest. Neither they nor the Railway
Company had any intimation of any right asserted by the
Indians or by the United States in its own behalf or in
behalf of the Indians. The appellants paid value and
are, in every sense, innocent purchasers. The land is
not in terms excepted from the grant, and there is no act
of Congress conferring any right upon the Indians.

The Court of Appeals concludes its opinion with the
statement that for these lands the Railroad Company
" was authorized to take lieu lands ". In this, however,
the court has overlooked the fact that no lieu lands are
shown to exist, even though we assume the abstract right.

The respect owed by respondent to the grant of July 25,
1866, is the respect owed by any grantor to the title of

his grantee. *Payne* v. *Central Pacific Ry. Co.,* 255 U. S. 228; *Burke* v. *Southern Pacific R. R. Co.,* 234 U. S. 669; *United States* v. *Northern Pacific Ry. Co.,* 256 U. S. 51.

It is true the Government sometimes claims immunity from certain species of estoppel, but the rule is well established that this immunity is limited to questions of delay and laches; it does not extend to general considerations of equity. *Iowa* v. *Carr,* 191 Fed. 257.

*Mr. Assistant Attorney General Riter,* with whom *Mr. Solicitor General Beck* and *Mr. S. W. Williams,* Special Assistant to the Attorney General, were on the brief, for the United States.

The decree is supported by the policy of Congress. *Johnson* v. *McIntosh,* 8 Wheat. 543; *Beecher* v. *Wetherby,* 95 U. S. 517; *United States* v. *Thomas,* 151 U. S. 577; *Minnesota* v. *Hitchcock,* 185 U. S. 373; Circulars of May 31, 1884, 3 L. D. 371; October 26, 1887, 6 L. D. 341; and December 30, 1903, 32 L. D. 382; *Poisal* v. *Fitzgerald,* 15 L. D. 19; Act September 4, 1841, 5 Stat. 453; Northern Pacific Railroad Company grant, Act July 2, 1864, 13 Stat. 365.

The grant to the railroad company excepts lands that were in the actual occupation of the Indians. *Ma-Gee-See* v. *Johnson,* 30 L. D. 125; *State of Wisconsin,* 19 L. D. 518; *Schumacher* v. *Washington,* 33 L. D. 454; *United States* v. *Boyd,* 68 Fed. 577. *Buttz* v. *Northern Pacific R. R.,* 119 U. S. 55, distinguished.

We do not concede that there was never tribal occupancy of the land in controversy. We think that everything in the record indicates that there was tribal occupancy.

But it is immaterial whether the land was occupied by a band of Indians, because the occupancy of the two families was sufficient to except the lands from the grant to the railroad company. We submit that the Indian

right of occupancy, of which so much is said in the various acts of Congress and court decisions, is the mere right to occupy as for the purpose of hunting and fishing, and that it is not the same as actual residence upon the land where the Indians live and make their home. This latter means more. Such lands are not public lands not reserved or otherwise appropriated.

The Act of March 3, 1851, is clearly inapplicable; so is the Act of April 8, 1864, 13 Stat. 39; no provision was made under them for these Indians. *Donnelly* v. *United States,* 228 U. S. 243.

It is as much the duty of the Government to protect the Indians in the occupation of the public domain where no provision is made for them as it is to protect them in the use and possession of the land allotted to them under restrictions. *United States* v. *Osage County,* 251 U. S. 128; *United States* v. *Waller,* 243 U. S. 452; *United States* v. *Beebe,* 127 U. S. 338; *United States* v. *New Orleans Pacific Ry. Co.,* 248 U. S. 507.

This cause is not barred by the statute of limitations. *Northern Pacific R. R. Co.* v. *United States,* 227 U. S. 355; *United States* v. *Whited & Wheless,* 246 U. S. 552.

The Government is not estopped to bring this suit, either because of the patent to the railroad company or because of the leases it took from the company through its officers and agents.

Mr. Justice SUTHERLAND delivered the opinion of the Court.

This appeal brings up for review a decree of the Circuit Court of Appeals, directing the cancellation of a land patent issued in 1904 by the United States to the defendant, the Central Pacific Railway Company, in so far as it purports to convey certain legal subdivisions of land in Sections 13 and 23, Township 43 North, Range 8 West, M. D. M., Siskiyou County, California. 276 Fed. 78,

The suit was brought in the federal District Court for the Northern District of California by the United States, acting in behalf of three Indians, who, it was claimed, had occupied the lands continuously since before 1859. The Act of July 25, 1866, c. 242, 14 Stat. 239, granted to the predecessor of the defendant company a series of odd numbered sections of land, including those named, but excepted from the grant such lands as "shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of." [1] The obligations of the grant were complied with and patent conveying the sections mentioned above, with others, was issued to the defendant company, as successor in interest of the legislative grantee.

The original complaint alleged an actual occupancy by the individual Indians, but sought cancellation of the patent primarily on the ground that the lands formed part of an Indian reservation provided for in a treaty which was pending for ratification when the Act of 1866 was passed; but this last contention was abandoned on the trial, it appearing that the treaty had been rejected by the Senate prior to that date.

But the District Court found for the plaintiff upon the issue of actual occupancy and entered a decree confirming the right of possession in the Indians, which, however, was confined to the land actually enclosed, being an irregular body of about 175 acres and which did not in terms cancel the patent.

---

[1] "Sec. 2. . . . and when any of said alternate sections or parts of sections shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, other lands, designated as aforesaid, shall be selected by said companies in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections designated by odd numbers as aforesaid, nearest to and not more than ten miles beyond the limits of said first-named alternate sections. . . ."

After the submission of the case plaintiff was allowed, over defendants' objection, to amend its bill by reciting that in bringing the suit the Government proceeded in its own right and as guardian of its Indian wards, thereafter named in the bill, by omitting all reference to the treaty, and by making the allegations respecting the Indian occupancy somewhat more specific.

The District Court refused to reopen the case on the defendants'· application to allow further proof on the issue last stated, holding that, as the occupation by the Indians was alleged in the original bill, defendants should have offered their evidence on that issue at the trial.   The court found that as early as 1859 the Indians named lived with their parents upon the lands described and had resided there continuously ever since; that they· had under fence between 150 and 175 acres in an irregularly shaped tract, running diagonally through the two sections, portions of which they had irrigated and cultivated; that they had constructed and maintained dwelling houses and divers outbuildings, and had actually resided upon the lands and improved them for the purpose of making for themselves homes.   These findings have support in the evidence and will be accepted here. *Adamson* v. *Gilliland,* 242 U. S. 350, 353.

The·decree of the Circuit Court of Appeals agreed with that of the District Court generally but extended the right of possession to the whole of each of the legal subdivisions which was fenced and cultivated in part, and reversed the, decree, with instructions to enter one cancelling the patent in respect of the entire 360 acres.

A reversal of this decree is now sought upon several grounds.

1. It is urged that the occupancy of land by individual Indians does not come within the exceptive provision of the grant.

· Until the Act of March 3, 1875, c. 131, 18 Stat. 402, 420, extending the homestead privilege to Indians, the right

of an individual Indian to acquire title to public lands by entry was not recognized. It cannot, therefore, be said that these lands were occupied by homestead settlers nor were they granted, sold or preëmpted, but the question remains, were they " reserved . . . or otherwise disposed of? " Unquestionably it has been the policy of the Federal Government from the beginning to respect the Indian right of occupancy, which could only be interfered with or determined by the United States. *Beecher* v. *Wetherby,* 95 U. S. 517, 525; *Minnesota* v. *Hitchcock,* 185 U. S. 373, 385. It is true that this policy has had in view the original nomadic tribal occupancy, but it is likewise true that in its essential spirit it applies to individual Indian occupancy as well; and the reasons for maintaining it in the latter case would seem to be no less cogent, since such occupancy being of a fixed character lends support to another well understood policy, namely, that of inducing the Indian to forsake his wandering habits and adopt those of civilized life. That such individual occupancy is entitled to protection finds strong support in various rulings of the Interior Department, to which in land matters this Court has always given much weight. *Midway Co.* v. *Eaton,* 183 U. S. 602, 609; *Hastings & Dakota R. R. Co.* v. *Whitney,* 132 U. S. 357, 366. That department has exercised its authority by issuing instructions from time to time to its local officers to protect the holdings of non-reservation Indians against the efforts of white men to dispossess them. See 3 L. D. 371; 6 L. D. 341; 32 L. D. 382. In *Poisal* v. *Fitzgerald,* 15 L. D. 19, the right of occupancy of an individual Indian was upheld as against an attempted homestead entry by a white man. In *State of Wisconsin,* 19 L. D. 518, there had been granted to the State certain swamp lands within an Indian reservation, but the right of Indian occupancy was upheld, although the grant in terms was not subject

thereto. In *Ma-Gee-See* v. *Johnson,* 30 L. D. 125, Johnson had made an entry under § 2289, Rev. Stats., which applied to "unappropriated public lands." It appeared that at the time of the entry and for some time thereafter the land had been in the possession and use of the plaintiff, an Indian. It was held that under the circumstances the land was not unappropriated within the meaning of the statute, and therefore not open to entry. In *Schumacher* v. *State of Washington,* 33 L. D. 454, 456, certain lands claimed by the State under a school grant, were occupied and had been improved by an Indian living apart from his tribe, but application for allotment had not been made until after the State had sold the land. It was held that the grant to the State did not attach under the provision excepting lands "otherwise disposed of by or under authority of an act of Congress." Secretary Hitchcock. in deciding the case, said:

"It is true that the Indian did not give notice of his intention to apply for an allotment of this land until after the State had made disposal thereof, but the purchaser at such sale was bound to take notice of the actual possession of the land by the Indian if, as alleged, he was openly and notoriously in possession thereof at and prior to the alleged sale, and that the act did not limit the time within which application for allotment should be made."

Congress itself, in apparent recognition of possible individual Indian possession, has in several of the state enabling acts required the incoming State to disclaim ll right and title to lands "owned or *held* by *any Indian* or Indian tribes." See 25 Stat. 676, c. 180, § 4, par. 2; 28 Stat. 107, c. 138, § 3, par. 2.

The action of these individual Indians in abandoning their nomadic habits and attaching themselves to a definite locality, reclaiming, cultivating and improving the soil and establishing fixed homes thereon was in harmony with the well understood desire of the Government which

we have mentioned.  To hold that by so doing they acquired no possessory rights to which the Government would accord protection, would be contrary to the whole spirit of the traditional American policy toward these dependent wards of the nation.

The fact that such right of occupancy finds no recognition in any statute or other formal governmental action is not conclusive.  The right, under the circumstances here disclosed, flows from a settled governmental policy. *Broder* v. *Water Co.*, 101 U. S. 274, 276, furnishes an analogy.  There this Court, holding that the Act of July 26, 1866, c. 262, § 9, 14 Stat. 251, acknowledging and confirming rights of way for the construction of ditches and canals, was in effect declaratory of a preëxisting right, said: " It is the established doctrine of this court that rights of . . . persons who had constructed canals and ditches . . . are rights which the government had, by its conduct, recognized and encouraged and was bound to protect, before the passage of the act of 1866.  We are of opinion that the section of the act which we have quoted was rather a voluntary *recognition of a preëxisting right of possession,* constituting a valid claim to its continued use, than the establishment of a new one."  Then, referring to the land grant to the Pacific Railroad Companies, which was made expressly subject to " pre-emption, homestead, swamp land, or other lawful claim," and which antedated the Act of 1866, the Court held that defendant's right of way for its canal, independent of that act, was within the excepting provision of the grant and said: " We have had occasion to construe a very common clause of reservation in grants to other railroad companies, and in aid of other works of internal improvements, and in all of them we have done so in the light of the general principle that Congress, in the act of making these donations, could not be supposed to exercise its liberality at the expense of pre-existing rights, which, though imperfect, were

still meritorious, and had just claims to legislative protection."

We are referred to *Buttz* v. *Northern Pacific R. R.,* 119 U. S. 55, but that case affords no aid to the defendant. There the railroad ran through a section of the country where the original right of Indian occupancy had not been extinguished and this Court held (p. 66): "The grant conveyed the fee subject to this right of occupancy. The Railroad Company took the property with this incumbrance." The United States, however, undertook to extinguish the Indian title as rapidly as might be consistent, etc., and when this was done the right of the company, it was held, immediately attached free from the Indian title.

In our opinion the possession of the property in question by these Indians was within the policy and with the implied consent of the Government. That possession was definite and substantial in character and open to observation when the railroad grant was made, and we have no doubt falls within the clause of the grant excepting from its operation lands "reserved . . . or otherwise disposed of."

2. It is insisted that any rights these Indians might otherwise have had are barred by the provisions of the Act of March 3, 1851, c. 41, 9 Stat. 631. This statute required every person claiming lands in California by virtue of any right or title derived from the Spanish or Mexican governments to present the same for settlement to a commission created by the act. There was a provision directing the commission to ascertain and report the tenure by which the mission lands were held and those held by civilized Indians, and other Indians described.[1]

---

[1] "Sec. 8. . . . . That each and every person claiming lands in California by virtue of any right or title derived from the Spanish or Mexican government, shall present the same to the said commissioners when sitting as a board, together with such documentary

The act plainly has no application. The Indians here concerned do not belong to any of the classes described therein and their claims were in no way derived from the Spanish or Mexican governments. Moreover, it does not appear that these Indians were occupying the lands in question when the act was passed.

*Barker* v. *Harvey*, 181 U. S. 481, does not support the defendants' contention. There the Indians whose claims were in dispute were Mission Indians claiming a right of occupancy derived from the Mexican Government. They had failed to present their claims to the Commission, and this, it was held, constituted an abandonment. The Indians here concerned have no such claim and are not shown to be within the terms of the Act of 1851 in any respect. It further appeared in that case that prior to the cession to the United States the Mexican authorities, upon examination, found that the Indians had aban-

---

evidence and testimony of witnesses as the said claimant relies upon in support of such claims; and it shall be the duty of the commissioners, when the case is ready for hearing, to proceed promptly to examine the same upon such evidence, and upon the evidence produced in behalf of the United States, and to decide upon the validity of the said claim, and, within thirty days after such decision is rendered, to certify the same, with the reasons on which it is founded, to the district attorney of the United States in and for the district in which such decision shall be rendered."

" Sec. 13. . . . That all lands, the claims to which have been finally rejected by the commissioners in manner herein provided, or which shall be finally decided to be invalid by the District or Supreme Court, and all lands the claims to which shall not have been presented to the said commissioners within two years after the date of this act, shall be deemed, held, and considered as part of the public domain of the United States; . . ."

" Sec. 16. . . . That it shall be the duty of the commissioners herein provided for to ascertain and report to the Secretary of the Interior the tenure by which the mission lands are held, and those held by civilized Indians, and those who are engaged in agriculture or labor of any kind, and also those which are occupied and cultivated by Pueblos or Rancheros Indians."

doned the lands and thereupon made an absolute grant to the plaintiff's predecessors, and, this grant having been confirmed by the Commission, a patent for the lands had issued.

3. The contention that the United States was without authority to maintain the suit in the capacity of guardian for these Indians is without merit. In *United States* v. *Kagama,* 118 U. S. 375, 383, 384, the general doctrine was laid down by this Court that the Indian tribes are wards of the nation, communities dependent on the United States. " From their very weakness and helplessness, so largely due to the course·of dealing of the Federal Government with them and the treaties in which it has been promised, there arises the duty of protection, and with it the power." This duty of protection and power extend to individual Indians, even though they may have become citizens. *United States* v. *Nice,* 241 U. S. 591, 598, and cases cited; *Heckman* v. *United States* 224 U. S. 413, 436; *United States* v. *Gray,* 201 Fed. 291; *United States* v. *Fitzgerald,* 201 Fed. 295. In *United States* v. *Gray, supra,* the capacity of the United States to sue for the breach of a lease made by·an Indian allottee was asserted and upheld. After pointing out the fact that it was the policy of the Government to protect all Indians and their property and to teach and persuade them to abandon their nomadic habits the court said: " The civil and political status of the Indians does not condition the power of the government to protect their property or to instruct them. Their admission to citizenship does not deprive the United States of its power, nor relieve it of its duty. ⋮ . ." In *United States* v. *Fitzgerald, supra,* it was held that the United States had capacity to sue for the taking of personal property from an Indian held by him subject to the management of an Indian agent, on the ground, among others, that such taking obstructs the execution of its governmental policy. At page 296 the

court said: " The United States may lawfully maintain suits in its own courts to prevent interference with the means it adopts to exercise its powers of government and to carry into effect its policies. It may maintain such suits, although it has no pecuniary interest in the subject-matter thereof, for the purpose of protecting and enforcing its governmental rights and to aid in the execution of its governmental policies." Congress may, if it thinks fit, emancipate the Indians from their wardship wholly or partially, *United States* v. *Waller,* 243 U. S. 452, 459, but in respect of the Indians here concerned that has not been done. It results, from the conclusion we have reached to the effect that these Indians had occupied the lands in dispute with the implied consent of the United States and in accordance with its policy, that the United States sustains such a relation to the subject matter and persons that its authority to maintain the suit cannot be questioned.

4. The suit is not barred by the Act of March 3, 1891, c. 561, § 8, 26 Stat. 1095, 1099, limiting the time within which suits may be brought by the United States to annul patents.

The object of that statute is to extinguish any right the *Government* may have in the land which is the subject of the patent, not to foreclose claims of third parties. Here the purpose of the annulment was not to establish the right of the United States to the lands, but to remove a cloud upon the possessory rights of its wards. As stated by this Court in *United States* v. *Winona & St. Peter R. R. Co.,* 165 U. S. 463, 475, the statute was passed in recognition of " the fact that when there are no adverse individual rights, and only the claims of the Government and of the present holder of the title to be considered, it is fitting that a time should come when no mere errors or irregularities on the part of the officers of the land department should be open for consideration." After the

lapse of the statutory period, the patent becomes conclusive against the Government but not as against claims and rights of others, merely because the relation of the Government to them is such as to justify or require its affirmative intervention. See *Northern Pacific Ry. Co.* v. *United States,* 227 U. S. 355, 367; *La Roque* v. *United States,* 239 U. S. 62, 68.

5. Neither is the Government estopped from maintaining this suit by reason of any act or declaration of its officers or agents. Since these Indians with the implied consent of the Government had acquired such rights of occupancy as entitled them to retain possession as against the defendants, no officer or agent of the Government had authority to deal with the land upon any other theory. The acceptance of leases for the land from the defendant company by agents of the Government was, under the circumstances, unauthorized and could not bind the Government; much less could it deprive the Indians of their rights. See and compare *Lee* v. *Munroe & Thornton,* 7 Cranch, 366; *Whiteside* v. *United States,* 93 U. S. 247, 257; *Dubuque & Sioux City R. R. Co.* v. *Des Moines Valley R. R. Co.,* 109 U. S. 329, 336; *Pine River Logging Co.* v. *United States,* 186 U. S. 279, 291.

6. We think, however, the Circuit Court of Appeals erred in holding that the right of the Indians extended to the entire area of each legal subdivision, irrespective of the inclosure, and we agree with the District Court in confining the right to the lands actually inclosed, including the whole of the northeast quarter of the southwest quarter of Section 13, the small portion thereof which had not been enclosed having been improved. The Court of Appeals, in support of its conclusion, relied upon *Quinby* v. *Conlan,* 104 U. S. 420. In that case Conlan had entered upon a quarter section of land, occupied a portion thereof, and declared his purpose to acquire a preëmption right to the whole, and soon thereafter had filed his declaratory

statement in legal form, claiming the whole as a preemptor. This Court sustained Conlan's claim as against Quinby, a subsequent settler. Here the claim for the Indians is based on occupancy alone, and the extent of it is clearly fixed by the inclosure, cultivation and improvements. The evidence does not disclose any act of dominion on their part over, or any claim or assertion of right to, any lands beyond the limits of their actual possessions as thus defined. Under the circumstances, their rights are confined to the limits of actual occupancy and cannot be extended constructively to other lands never possessed or claimed, simply because they form part of the same legal subdivisions. See *Garrison* v. *Sampson,* 15 Cal. 93, 95, where the Supreme Court of California said:

"A fatal objection to the judgment consists in the finding of the Judge in favor of the plaintiff for the whole tract of land sued for. The plaintiff claims by force of prior possession and a contract or consent on the part of the defendant, whom he mediately or immediately let into possession, to hold the premises for him or subject to his order. The land is public land. It was not taken up by the plaintiff under the Possessory Act of this State, nor was it inclosed. There were a house and corral on the land. Of these he may be said to have been in the actual occupancy. But we cannot see from the proofs any right of possession to the whole of the quarter section, or even any claim to it. We do not understand that the mere fact that a man enters upon a portion of the public land, and builds or occupies a house or corral on a small part of it, gives him any claim to the whole subdivision, even as against one entering upon it without title. The case would be different if he claimed under the Possessory Act, and pursued the necessary steps prescribed by it; or if he had made his entry under the preëmption laws of the United States. But merely going on waste and uninclosed land, and building a house and corral, and even subse-

quently cutting hay on a part, did not extend his possession to the whole of the one hundred and sixty acres."

This is in accordance with the general rule that possession alone, without title or color of title confers no right beyond the limits of actual possession. See *Green* v. *Liter,* 8 Cranch, 229, 250; *Watkins* v. *Holman,* 16 Pet. 25, 55; *Marine Ry. & Coal Co.* v. *United States,* 257 U. S. 47, 65; *Humphries* v. *Huffman,* 33 Ohio St. 395, 401; *Langdon* v. *Templeton,* 66 Vt. 173, 179; *Ryan* v. *Kilpatrick,* 66 Ala. 332, 337.

Certain other contentions of defendants we deem it unnecessary to review, although they have been carefully considered. Aside from that stated in the last paragraph we find no error, but for the reasons there given, the decree of the Circuit Court of Appeals is reversed and the cause remanded to the District Court, with instructions to amend its decree so as to cancel the patent in respect of the lands possessed by the Indians and, as so amended, that decree is affirmed.

*Reversed.*