SWIMMING TURTLE, a/k/a
Oliver Godfroy,

v.

**BOARD OF COUNTY COMMISSIONERS
OF MIAMI COUNTY et al.**

Civ. No. S 74–98.

United States District Court,
N. D. Indiana,
South Bend Division.

May 15, 1975.

See also 441 F.Supp. 375.

Thomas N. Tureen, Barry A. Margolin, Calais, Maine, Hugo E. Martz, Valparaiso, Ind., for plaintiff.

James A. Grund, Peru, Ind., Theodore L. Sendak, Atty. Gen., State of Indiana, Indianapolis, Ind., for defendants.

## MEMORANDUM

GRANT, District Judge.

The plaintiff, Swimming Turtle, a/k/a Oliver Godfroy, brought the above entitled action pursuant to 28 U.S.C. §§ 1331, 1337, 1343, 1353, and 25 U.S.C. § 345, and seeks, by his complaint, to recover taxes which he alleges were wrongfully assessed and collected on Indian land; a declaration of plaintiff's rights with respect to the taxability of his land; and an order enjoining officials of Miami County and Butler Township from further attempts to assess and collect taxes on plaintiff's land.

Plaintiff asserts that he is the great-grandson of Francis Godfroy, war-chief of the Miami Tribe; that he is an Indian by birth and a member of the Miami Tribe or Nation of Indians; and that he owns a parcel of land situated in Butler Township, Miami County, the location of which he has set forth in the complaint.

He brings this action against the Board of County Commissioners of Miami County individually and in their capacity as Commissioners. In his claim for relief, the plaintiff states that the exclusive jurisdiction over Indian affairs is conferred on Congress by the Commerce Clause, Article I, § 8[3] of the Constitution and that the Miami Tribe of Indians is recognized as a tribe of Indians by the United States. He also makes reference to the Ordinance enacted by the Continental Congress on July 13, 1787, (hereinafter referred to as the Northwest Ordinance) under the terms of which Indiana agreed to be bound by the Enabling Act of 1816. 1 Burns Ind.Stat. Ann. 390 (1955 Repl.). The pertinent provision for plaintiff's purposes is Article III of the Northwest Ordinance which provides as follows:

The utmost good faith shall always be observed toward the Indians; their lands and property shall never be taken from them without their consent; and, in their property, rights, and liberty, they shall never be invaded or disturbed, unless in just and lawful wars authorized by Congress; but laws founded in justice and humanity shall from time to time be made, for preventing wrongs being done to them, and for preserving peace and friendship with them.

Plaintiff contends that by virtue of this provision, Indian lands affected by the Northwest Ordinance were and are exempt from taxation by state and local authorities.

It is plaintiff's contention that by the terms of Article XII of the Treaty at the Forks of the Wabash, November 6, 1838, 7 Stat. 569, the United States agreed to grant by patent several tracts of land to War-Chief Francis Godfroy, including the tract described in Paragraph 3 of plaintiff's complaint, and that a patent for the land was executed on February 22, 1849, and was certified by the Land Office on February 24, 1877. Plaintiff states that before the 1838 Treaty, the lands allotted to Godfroy were a part of the tribal lands of the Miami Tribe, or Nation, of Indians and that the agreement on the part of the United States was in partial consideration of the cession of vast tracts of tribal land to the United States. He also asserts that the tax exempt status of the Indian land under Article III of the Northwest Ordinance was known to the United States and to those who were promised patents under the Treaty of 1838. He further contends that the protection by the United States from taxation by the State constituted part of the consideration for the cession of tribal land by the Miami Tribe to the United States.

Oliver Godfroy contends that the land described has remained in the possession of Francis Godfroy and his descendants continuously since 1838. He also states that by

Treaty of November 28, 1840, 7 Stat. 582, the Miami Tribe ceded the remainder of their tribal lands in Indiana to the United States and agreed to move west of the Mississippi River. The family of Francis Godfroy was permitted to remain in Indiana by the United States, with the consent of the Tribe.

Plaintiff sets forth two articles of the Treaty of June 5, 1854, 10 Stat. 1093, in which the Miami Tribe stipulated as follows:

*Article IX —*

> They desire to be at peace with all men, and they bind themselves not to commit depredations or wrong upon either Indians or citizens; and should difficulties at any time arise, they will abide by the laws of the United States in such cases made and provided, as they expect to be protected, and to have their rights vindicated by those laws.

*Article XI —*

> The object of this instrument being to advance the interest of said Indians, it is agreed, if it prove insufficient, from causes which cannot now be foreseen, to effect these ends, the President may, by and with the advice and consent of the Senate, adopt such policy in the management of their affairs, as, in his judgment, may be most beneficial to them; or Congress may, hereinafter, make such provision by law, as experience shall prove to be necessary.

It is the plaintiff's position that the defendants have caused to be assessed and collected, and will continue to collect and assess, a tax on the property described in Paragraph 3 of the complaint and that the plaintiff has paid tax on said land since 1923 for the sole purpose of preventing sale of the land described in Paragraph 3. Thus plaintiff asks the Court to enjoin the defendants from assessing and collecting tax on the said land, to enter an order declaring the rights of the parties, and to award damages in the amount of taxes wrongfully assessed and collected by defendants and paid by plaintiff. Plaintiff also seeks to recover attorney's fees and any further relief the Court deems appropriate.

The defendants, in response to plaintiff's complaint, filed a motion to dismiss and a motion for summary judgment—which motions were argued orally before the Honorable George N. Beamer, Sr., who died subsequent to the oral argument but prior to ruling on the motions. The parties in briefs filed on November 29, 1974, by the defendant, and December 16, 1974, by the plaintiff, agreed to rebrief their contentions and to submit the case to the Court on the basis of these briefs without further oral argument.

The defendants' counsel, by letter dated August 2, 1974, and filed August 5, 1974, informed the Court that he was withdrawing defendants' motion to dismiss and would rely solely on the motion for summary judgment.

It is the order of the Court that the defendants' request to withdraw their motion to dismiss be granted and that motion is now ordered withdrawn.

As a result of defendants' withdrawal of the motion to dismiss, the Court finds that the only motion before the Court is defendants' motion for summary judgment. In defendants' summary brief filed November 29, 1974, they state that the issues raised by the briefs are as follows:

(1) The res judicata effect of the Indiana Appellate Court's decision of *Board of Commissioners of Miami County v. Godfroy*, 27 Ind.App. 610, 60 N.E. 177.

(2) The legal effect on this case of Article II and Article III of the Northwest Ordinance, 1 Burns Ind.Ann.Stat. 372, 375 (1955 Repl.).

(3) The legal effect on this action of Burns Ind.Ann.Stat., S. 64–101 to and including S. 64–1625, I.C. 6–1–1–1 through 6–1–1–37, Acts 1919, Chapter 59, S. 1, p. 198, as amended by Acts, 1965, Chapter 234, S. 1, p. 605, and amendments thereto, which is the Indiana Statute on assessment of property taxes.

I—RES JUDICATA EFFECT OF BOARD OF COMMISSIONERS OF MIAMI COUNTY v. GODFROY, 27 Ind.App. 610, 60 N.E. 177 (1901).

The defendant contends that in the present action the plaintiff is bound under the doctrines of res judicata and collateral estoppel by the holding of the Indiana Appellate Court in *Board of Commissioners of Miami County v. Godfroy*, and that this Court is required to give full faith and credit to the 1901 state court decision. *Board of Commissioners of Miami County v. Godfroy* was filed by Gabriel Godfroy, son of Francis Godfroy, against the Board of Commissioners of Miami County, to enjoin the taxation of plaintiff's land. The court held that the land was not exempt from tax under Article III of the Northwest Ordinance because the plaintiff voluntarily became a citizen under the Act of Congress of February 8, 1887, and thus was no longer an Indian for the purposes of Article III of the Northwest Ordinance.

It is the defendants' position that the plaintiff is bound by this earlier state court decision because Oliver Godfroy is in privity with appellee, Gabriel Godfroy, in the case of *Board of Commissioners of Miami County, et al. v. Godfroy*, having derived his title to said real estate through Gabriel Godfroy and being a member of the family of Francis Godfroy. Defendants also contend that the doctrine of collateral estoppel is applicable to this issue, as the Indiana State Court has previously determined the factual issue which has arisen in this present litigation. In support of their position, defendants cite West Indiana Law Encyclopedia Vol. 17, p. 448, which states as follows:

As to property generally, both real and personal, a successor in interest is concluded by a judgment for or against the person from who he derives his title, whether by purchase, inheritance, devise, or otherwise, where his succession accrued subsequent to the rendition of the judgment or the commencement of the action. Thus a judgment against an owner of realty is conclusive on his purchaser, or grantee, or other persons claiming under him, who acquired the property after the rendition of the judgment.

Defendants also cite, I.L.E. Judgment Sec. 422, p. 443, which states in part as follows:

Our Supreme Court has stated that a "privy" is one who, after the commencement of the action has acquired an interest in the subject matter effected by the judgment, through or under one of the parties as by inheritance, succession or purchase. Citing *Tobin v. McClellan*, 225 Ind. 335, 73 N.E.2d 679.

The plaintiff, in response to defendants' position, agrees with the statement of the law as set forth by the defendant. However, he does not agree with defendants' conclusion that plaintiff received his interest from the plaintiff in *Board of Comm'rs v. Godfroy* by inheritance and thus is bound by that decision. Plaintiff states that he acquired his interest by purchase from his sister, Elizabeth Coiner nee Godfroy, on October 6, 1943, and in part by deed of July 19, 1945, from his brother Ira (since deceased) in joint tenancy. Elizabeth and Ira, in turn, acquired their interests by deed from Gabriel Godfroy (the plaintiff in *Board of Comm'rs v. Godfroy*) dated May 7, 1892, nine years before the 1901 decision of the Indiana Appellate Court in *Godfroy*, and thirteen years before final judgment by the Miami Circuit Court in 1905. Because of this, plaintiff contends there is an issue of material fact as to whether plaintiff is in privity with the plaintiff in *Board of Comm'rs v. Godfroy* so as not to permit application of the doctrine of res judicata and thus summary judgment cannot be granted in favor of the defendants.

In reviewing the res judicata question, the court finds that in the case of *Tobin v. McClellan*, 225 Ind. 335, 73 N.E.2d 679 (1947), the state court, in reviewing an action in ejectment, was concerned with a plea of former adjudication and stated in part as follows:

The general rule is that the plea of former adjudication is available only when there is privity and mutuality of estoppel.

. . . Under the requirement of privity, only parties to the former judgment or their privies may take advantage of or be bound by it. A party in this connection is one who is 'directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment'. . . . A privy is one who, *after the commencement of the action*, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase.

In the present action the defendants assert that the plaintiff is in privy with Gabriel Godfroy, appellee in *Board of Comm'rs v. Godfroy*, because he acquired his interest from Gabriel Godfroy. However, plaintiff challenges this fact by stating that he acquired his interest by purchase from his sister and deed in joint tenancy from his deceased brother. His brother and sister, in turn, acquired their interest by deed from Gabriel Godfroy in 1892, nine years before the decision of the Indiana Appellate Court in *Godfroy*, and thirteen years before final judgment by the Miami Circuit Court in 1905.

▮ If the facts as set out by plaintiff are true, then Elizabeth Coiner nee Godfroy, sister of plaintiff, and Ira Godfroy, brother of plaintiff, may not be privies to the action by Gabriel Godfroy since they may have acquired their interest in the land prior to the commencement of the state court action. It is certain from the facts as set out by plaintiff that they acquired their interest prior to the Appellate Court's decision and before final judgment by the Miami Circuit Court in 1905. In order to be privy to an action, one must acquire an interest in the subject matter affected by the judgment through or under one of the parties. *Tobin, supra*, 73 N.E.2d at 683. Under the facts as presented by the plaintiff, Elizabeth and Ira may not have been party to the action brought by the named party, Gabriel Godfroy. Thus, defendants have not shown that Elizabeth and Ira, from whom Oliver got title to the land, were either party or privy to the action in 1901 by Gabriel. Since it is unclear whether they were party or privy, it is also unclear whether their successor in interest is privy to the action. *Kimberly-Clark Co. v. Pattern Paper Co.*, 153 Wis. 69, 140 N.W. 1066 (1913).

▮ Because there is a dispute of fact as to whether the plaintiff is privy to the 1901 action by Gabriel Godfroy, the Court cannot say as a matter of law that plaintiff is estopped from litigating the present action by the doctrine of res judicata.

## II—THE NORTHWEST ORDINANCE—

As a result of the Court's inability to find *Board of Comm'rs v. Godfroy* a bar to the present action, the Court will consider the legal effect of Article II and Article III of the Northwest Ordinance on this case. Article II of the Northwest Ordinance provides in part as follows:

No man shall be deprived of his liberty or property but by the judgment of his peers, or the law of the land . . .

Article III of the Northwest Ordinance provides in part as follows:

The utmost good faith shall always be observed toward the Indians; their lands and property shall never be taken from them without their consent; and, in their property, rights, and liberty, they never shall be invaded or disturbed, unless in just and lawful wars authorized by Congress . . ..

It is the defendants' position that Article II made plaintiff and others so situated subject to judgment of his peers, or the law of the land. As a result of this, the defendants argue that the plaintiff is subject to the law of Indiana, as provided in Burns Ind.Stat.Ann., Sec. 64–101 to and including 64–1625, which compels owners of real estate to have same assessed for taxes and requires them to pay taxes accordingly with no exemption under those Statutes being made as to members of the Nation of Indians.

Defendants go on to contend that the plaintiff has consented to be a citizen of the United States by being an owner of real estate by virtue of the act of Congress of February 8, 1887, which declares that Indians holding land allotted in severalty are to be citizens of the United States, and they therefore, must be subject to the laws of the land, including taxation of their own land, as required by the Indiana Statute.

The plaintiff argues that Article III has been uniformly construed as exempting Miami Indian land from taxation by Indiana or its political subdivisions. *Wau-pe-man-qua v. Aldrich*, 28 F. 489 (Cir.Ct., D.Ind. 1886); *Board of Comm'rs v. Simons*, 129 Ind. 193, 28 N.E. 420 (1891). It is his position that if the Court were to accept the defendants' interpretation of Article II it would be inconsistent with the cases construing the Ordinance and render the language of Article III meaningless. Plaintiff also states that Section 6 of the General Allotment Act of 1887, Act of Feb. 8, 1887, 24 Stat. 388, provides that nothing in the Act was to impair or otherwise affect the property rights of Indians affected. He further contends that the court's conclusion in *Board of Comm'rs v. Godfroy* that one may not be at the same time a citizen and an Indian for purposes of federal law is squarely contradicted by numerous Supreme Court decisions. *Board of Comm'rs v. Seber*, 318 U.S. 705, 63 S.Ct. 920, 87 L.Ed. 1094 (1943); *Cramer v. United States*, 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622 (1923); *United States v. Nice*, 241 U.S. 591, 36 S.Ct. 696, 60 L.Ed. 1192 (1916). Plaintiff contends that citizenship alone does not deprive an Indian of the special status, protection, and benefits conferred by federal law.

█ The Court finds that Article III of the Northwest Ordinance has been interpreted by courts to mean that Indians were allowed to live on their lands free from taxation by the states. *Wau-pe-man-qua v. Aldrich, supra; Board of Comm'rs v. Simons, supra; Board of Comm'rs v. Godfroy, supra.* In reviewing the law as it has been applied to Indians, a general principal with regard to taxation has been recognized.

That is that Indians and Indian property on an Indian reservation are not subject to taxation by the state except by virtue of express authority of Congress empowering the state to tax them. On the other hand, Indian property outside the reservation is subject to state tax unless congressional authority for exempting them from state taxation can be found. The Enabling Act of 1816, 1 Burns Stat.Ann. 390 (1955 Repl.) which included the Northwest Ordinance, has been interpreted as authority for such an exception from state taxation. Federal Indian Law, Association on American Affairs (1966), p. 845.

█ However, it is also a fact that subsequent legislation can remove this exemption and subject the Indian land to taxation by the state. Termination of federal supervision and control ordinarily has the effect of subjecting Indian property to state taxation. The fact that an Indian has been granted citizenship is not sufficient to remove from him all rights previously granted to him as an Indian. *Federal Indian Law, supra,* p. 523 and 844.

█ The courts, in dealing with Article III of the Northwest Ordinance, have looked to see if the Indian has in fact given up his Indian ways and in effect become a citizen not only in name but in his independence from both the federal government and the tribe. In order to determine the present status of an Indian who is no longer living on the reservation, it is necessary to review the provisions of the treaty under which he received his land and to determine the amount of control over him and his land both by the tribe and the federal government.

The court in *Board of Comm'rs v. Godfroy,* relied on the fact that the plaintiff was made a citizen by the Allotment Act of 1887 in reaching the conclusion that he was now subject to taxation by the state. However, under the Allotment Act, Indians who had received land were not subject to tax until they received a patent in fee which came only upon termination of the government trusteeship over the land. It was the complete independence from both govern-

374

ment control and the private ownership of land that caused allottees to be subject to taxation by the states.

 In the present action, plaintiff's land was allocated to Francis Godfroy by the terms of the Treaty at the Forks of the Wabash, November 23, 1838, the terms of which are not before this Court. The facts before the Court are not complete for final adjudication of this matter at the present time. The Court finds that Article II and Article III of the Northwest Ordinance are not inconsistent but it is unclear for purposes of this case whether plaintiff can still claim the benefits provided under Article III. Because the Court finds a further factual development of the case, necessary summary judgment would not be proper at this time.

### III—THE INDIANA STATUTE ON ASSESSMENT OF PROPERTY TAXES—

The defendants, in their third ground for summary judgment, attempt to reassert the claim that the court lacks jurisdiction because plaintiff failed to submit his claims to the Miami County Commissioners for allowance or rejection. This is the same matter which was originally raised in defendants' motion to dismiss, which motion defendants have withdrawn because the case cited by them did not support this proposition. The Court has granted the defendants' motion to withdraw their motion to dismiss and will not at this time concern itself with an issue no longer before the Court.

Defendants also contend that Indiana Stat.Ann. § 64–2081, which imposes a three-year statute of limitations on actions to recover illegally assessed taxes, applies in this case.

From the facts before the Court, the status of the plaintiff is unclear and thus the Court cannot at this time reach a conclusion one way or another as to whether plaintiff is subject to the laws of the state such as the Indiana Stat.Ann. § 64–2081. Because further evidence is necessary before the Court can decide this question, summary judgment cannot be granted at this time.

It is the order of the Court that defendants' motion for summary judgment be denied.