**WESTERN SHOSHONE NATIONAL COUNCIL, Roland Brady, Ian Zabarte, Glenn Holley, Felix Ike, Plaintiffs–Appellants,**

v.

**William MOLINI, Director, Nevada Department of Wildlife, Terry Crawforth, Director of Law Enforcement, Nevada Department of Wildlife, Defendants–Appellees.**

No. 90–16175.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 26, 1991.

Decided Dec. 9, 1991.

S. James Anaya, Iowa City, Iowa, for plaintiffs-appellants.

C. Wayne Howle, Deputy Atty. Gen., Carson City, Nev., for defendants-appellees.

Before WALLACE, Chief Judge, WIGGINS and BRUNETTI, Circuit Judges.

WALLACE, Chief Judge:

The Western Shoshone National Council and individual Western Shoshone (Shoshone) appeal from the district court's summary judgment in favor of the State of Nevada Department of Wildlife (Nevada), in their action to enjoin certain wildlife laws and regulations. The Shoshone argue that the district court erred by holding that an award by the Indian Claims Commission (Commission) conclusively established that Shoshone aboriginal and treaty-reserved rights to hunt and fish had been extinguished. The district court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1362 and 2201. We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291. We affirm.

I

The Indian Claims Commission Act (Act) was designed to provide a forum for Indian claims arising from the United States's taking of Indian lands. 25 U.S.C. § 70 (1976 ed.). The Act created the Commission, which was empowered to hear and decide land claims brought against the United States. *Id.* § 70a. The Act also provided that "payment of any claim ... shall be a full discharge of the United States of all claims and demands touching any of the matters involved in the controversy." *Id.* § 70u.

In 1951, the Temoak Band of Indians filed suit under the Act on behalf of the Western Shoshone, stating a claim based on extinguishment of tribal rights to lands in Nevada and other states. *Shoshone Nation or Tribe of Indians v. United States*, 11 Ind.Cl.Comm. 387, 419 (1962) (*Shoshone Nation*). After hearing all the evidence, the Commission concluded that the Shoshone title had been extinguished, "by gradual encroachment by whites, settlers and others, and the acquisition, disposition or taking of their lands by the United States...." *Id.* at 416. The Commission later valued the land taken and ordered the United States to pay $26 million to the Shoshone in compensation for "full title extinguishment." *Temoak Band of Western Shoshone Indians v. United States*, 593 F.2d 994, 999, 219 Ct.Cl. 346, 356 (*Temoak Band*), *cert. denied*, 444 U.S. 973, 100 S.Ct. 469, 62 L.Ed.2d 389 (1979).

In 1986, the Shoshone brought this action against the State of Nevada, arguing that Nevada's wildlife regulations interfered with Shoshone aboriginal and treaty-reserved rights to hunt and fish. In defense, Nevada relied on the *Shoshone Nation* litigation, and argued that the Shoshone no longer held any title to the land in question. The district court agreed, and entered summary judgment in favor of the State. We review this ruling de novo. *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1421 (9th Cir.1989), *cert.*

*denied,* —— U.S. ——, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990).

## II

The Shoshone argue that the summary judgment must be reversed for three reasons. First, they contend that the Commission award has no preclusive effect in their lawsuit against the State of Nevada. Second, they argue that hunting and fishing rights are not affected by the title determination in *Shoshone Nation*. Finally, they assert that the Treaty of Ruby Valley operates as an independent source of hunting and fishing rights, and that those rights survive the *Shoshone Nation* litigation. We address each of these contentions.

### A.

■ The Shoshone first argue that the *Shoshone Nation* litigation only involved an adjudication of rights between the United States and the Shoshone Indians, and that this litigation does not operate to bar their action against the State of Nevada. In support of this argument, they point out that the statutory bar of 25 U.S.C. § 70u only applies to actions against the United States. They therefore contend that although they have been paid $26 million for loss of title, they are nonetheless entitled to relitigate the issue of title against the State of Nevada.

The Shoshone's argument has already been rejected in this circuit. In *United States v. Dann,* 873 F.2d 1189 (9th Cir. 1989) (*Dann*), *cert. denied,* 493 U.S. 890, 110 S.Ct. 234, 107 L.Ed.2d 185 (1989), two Shoshone Indians asserted tribal title as a defense to a trespass claim. In rejecting this defense, we stated that "the [Commission proceeding and subsequent] payment for the taking of a [sic] aboriginal title establishes that the title has been extinguished." *Id.* at 1194; *see also id.* at 1199 ("the payment of the claims award establishes conclusively that a taking occurred"). We did not suggest that the Commission's determination of title applied only in actions against the United States. *See id.*

In *United States v. Pend Oreille Public Utility District No. 1,* 926 F.2d 1502, 1507 (9th Cir.1991), we followed *Dann* by holding that a Commission award barred the Kalispo Indian Tribe from asserting title against the State of Washington. There, we reasoned that "[t]he chief purpose of the Act [establishing the Commission] was to dispose of the Indian claims problem with finality" and that consistent with this purpose, compensation for a taking established that Indian title had been extinguished. *Id.* at 1508 (internal quotations and citations omitted). We therefore found that the Commission award barred the Tribe from relitigating the issue of title in a subsequent proceeding against the State of Washington. *Id.*

*Dann* and *Pend Oreille* are controlling. We hold that the award in *Shoshone Nation* constituted a general determination of title which bars the Shoshone from asserting title against the State of Nevada.

### B.

■ The Shoshone also argue that their aboriginal and treaty reserved hunting and fishing rights survive the extinguishment of title. They contend that "[t]he claim [before the Commission] was for compensation for the presumed taking of aboriginal title, whereas this case is for injunctive relief against the interference with hunting and fishing rights that exist independently of aboriginal title." Thus, the Shoshone draw a distinction between title and hunting and fishing rights and argue that a taking of the former does not entail a taking of the latter.

The Supreme Court has held that the conveyance of title includes hunting and fishing rights, absent an express reservation of those rights. In *Oregon Department of Fish and Wildlife v. Klamath Indian Tribe,* 473 U.S. 753, 105 S.Ct. 3420, 87 L.Ed.2d 542 (1985) (*Oregon Department of Fish* ), the Court construed a 1901 agreement between the Klamath Tribe and the United States giving up certain lands that had formerly been part of the Tribe's reservation. Under the agreement, the Klamath Tribe consented to "cede, surrender, grant, and convey to the United States all their

claim, right, title and interest" in the reservation lands. *Id.* at 760, 105 S.Ct. at 3425. However, the agreement also provided that it would not be "construed to deprive [the Klamath Tribe] of any benefits to which they are entitled under existing treaties not inconsistent with the provisions of this agreement." *Id.* at 761, 105 S.Ct. at 3425.

Relying on this language, the Klamath Tribe argued that the agreement did not deprive them of their hunting and fishing rights on the ceded lands. *Id.* at 762–63, 105 S.Ct. at 3425–26. The Supreme Court rejected this argument. The Court pointed out that the treaty language had included an unrestricted grant of land to the United States. The Court concluded that the "general conveyance unquestionably carried with it whatever special hunting and fishing rights the Indians had previously possessed [in the land]." *Id.* at 766, 105 S.Ct. at 3428.

The Shoshone argue that *Oregon Department of Fish* should be limited to cases involving treaties, and does not have any relevance to our interpretation of the Commission's findings. But how can this be so? Both cases involve a general transfer of title. *See Temoak Band*, 593 F.2d at 999, 219 Ct.Cl. at 356 (compensation for "full title extinguishment"); *Oregon Department of Fish*, 473 U.S. at 766, 105 S.Ct. at 3428 ("general conveyance" of title). This unqualified transfer of title includes a transfer of hunting and fishing rights. *Oregon Department of Fish*, 473 U.S. at 766, 105 S.Ct. at 3428; *accord In Re Wilson*, 30 Cal.3d 21, 177 Cal.Rptr. 336, 634 P.2d 363 (1981) (rejecting Indians' claim that extinguishment of aboriginal title does not extinguish hunting and fishing rights, after surveying case law and concluding that "the right to hunt and fish has been held included in the right of occupancy").

The Shoshone also urge us to follow a number of cases in which courts have held that treaty-based rights cannot be extinguished absent an express termination of those rights. *See Lower Brule Sioux Tribe v. South Dakota*, 711 F.2d 809, 821–26 (8th Cir.1983) (right to hunt and fish expressly granted by treaty will not be abrogated absent express and unambiguous statement by Congress), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 171 (1984); *Lac Courte Oreilles Band of Chippewa Indians v. Voigt*, 700 F.2d 341, 355–58 (7th Cir.) (abrogation of explicit treaty right to hunt and fish should not be found without compelling evidence), *cert. denied*, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). However, these cases are inapplicable here, because there is no treaty which grants the Shoshone hunting and fishing rights. We therefore hold that Shoshone aboriginal hunting and fishing rights were taken when "full title extinguishment" occurred.

## C.

The Shoshone finally argue that the Treaty of Ruby Valley operates as an independent source of hunting and fishing rights. They assert that the Commission award, while extinguishing aboriginal title, could not affect their independent treaty-based rights. This argument ignores the fact that the Commission had before it a claim based on both aboriginal and treaty-based rights, and ordered compensation for the extinguishment of those rights. *See Shoshone Nation*, 11 Ind.Cl.Comm. at 419. The Commission's general finding that title had been extinguished therefore also operates to bar the Shoshone from asserting hunting and fishing rights based on the Treaty of Ruby Valley. *See Oregon Department of Fish*, 473 U.S. at 773, 105 S.Ct. at 3431.

## D.

We conclude that the Commission award establishes conclusively that Shoshone title has been extinguished. We further hold that absent some express reservation, hunting and fishing rights are subsumed within an unconditional transfer of title. We therefore affirm the district court's summary judgment in favor of Nevada in the Shoshone action to enjoin the Nevada fishing and hunting regulations.

## III

The Shoshone also appeal from the district court's denial of their motion to

amend the complaint to include a claim for individual, as opposed to tribal, title. The Shoshone filed their original petition in this case in December of 1986. They then twice amended their complaint, and filed a motion for summary judgment in October of 1987. The district court delayed action on the motion pending this circuit's ruling in *Dann.* After *Dann* was decided, the State of Nevada filed a cross-motion for summary judgment. In response, the Shoshone moved for permission to amend the complaint. The district judge implicitly denied leave to amend when he granted the government's motion for summary judgment. *See Agostino v. Ellamar Packing Co.,* 191 F.2d 576, 577 (9th Cir.1951) (denial of a motion is implied by an order inconsistent with the motion).

We review denial of a motion to amend for abuse of discretion. *Ascon Properties, Inc. v. Mobil Oil Co.,* 866 F.2d 1149, 1160 (9th Cir.1989). Where the district judge offers no express reasons for dismissing a complaint without leave to amend, we should evaluate the propriety of the appellant's motion by looking at five factors: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether plaintiff has previously amended its complaint." *Id.*

Several of these factors support the district judge's denial of the leave to amend. The second factor is implicated because the motion to amend the complaint was filed two and a half years after the litigation commenced, and there appears to be no justification for the delay. The issue of individual aboriginal title was raised in the *Dann* litigation as early as 1985, *see United States v. Dann,* 470 U.S. 39, 50, 105 S.Ct. 1058, 1064, 84 L.Ed.2d 28 (1985), and the basis for such claims is the 1923 opinion in *Cramer v. United States,* 261 U.S. 219, 43 S.Ct. 342, 67 L.Ed. 622 (1923). Therefore, the Shoshone could have raised this issue much earlier in the litigation by relying on these relevant cases.

Turning to the third factor, there is evidence that the amendment would prejudice the State of Nevada. In *Ascon,* we found prejudice because "the time and expense of continued litigation on a new theory, with the possibility of additional discovery, would cause undue prejudice." 866 F.2d at 1161 (internal quotations omitted); *see also M/V American Queen v. San Diego Marine Construction Corp.,* 708 F.2d 1483, 1492 (9th Cir.1983) (denial of motion to amend upheld where new allegations based on facts moving party already knew would totally alter basis of action and necessitate additional discovery). Similarly here, the introduction of a major new evidentiary issue at such a late stage in the litigation will require extensive additional discovery. In addition, Nevada has been subjected to an injunction during the entire course of the litigation. The lapse of time caused by additional discovery, briefing, and argument, will further prejudice Nevada, because Nevada's fish and game law will continue to be held in abeyance by the district court's injunction while this litigation continues.

Finally, factor five is involved because the Shoshone have already amended their complaint two times.

In light of the circumstances of the case, the district judge's denial of leave to file a third amended complaint was not an abuse of discretion.

AFFIRMED.